**Rodrigo MEJIA, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 04–CM–517.**

District of Columbia Court of Appeals.

Argued Dec. 12, 2006.

Decided Feb. 1, 2007.

Lee Richard Goebes, Public Defender Service, with whom James Klein and Samia Fam, Public Defender Service, were on the brief, for appellant.

Elizabeth H. Danello, Assistant United States Attorney, with whom Kenneth L. Wainstein, United States Attorney at the time the brief was filed, Roy W. McLeese III, Elizabeth Trosman and Lynn E. Haa-

land, Assistant United States Attorneys, were on the brief, for appellee.

Before GLICKMAN and KRAMER, Associate Judges, and NEBEKER, Senior Judge.

NEBEKER, Senior Judge:

This is an appeal from a misdemeanor sexual abuse conviction. After a bench trial, appellant was found guilty of one count of misdemeanor sexual abuse pursuant to D.C.Code § 22–3006. According to the government's evidence, J.C. was staying with her aunt and uncle in 2001 while her grandmother was in El Salvador. At that time, J.C. was nine-years-old. She was on the couch coloring when appellant, her uncle, climbed on top of her and tried to remove her clothing. After she screamed, appellant got off of her and went into the kitchen. J.C. tried to call her grandfather from her cousin's room, but no one was home. She testified that she took the phone off its hook in the kitchen and, because the cord was long, ran the cord under the door to her cousin's room to make the call.

During cross examination on April 20, 2004, appellant's trial counsel introduced a short phone cord in an attempt to show that J.C. could not have taken the phone into her cousin's room as she claimed. Also during cross examination, J.C. acknowledged that on April 12, 2004, prior to providing her direct testimony, she told the prosecutor that she had fabricated the allegations. The prosecutor then warned J.C. she could get into trouble for telling a lie and played a tape of J.C.'s earlier conversation with a detective. J.C. then testified for the government. On redirect, J.C. testified that she had recanted because she loved her cousins, she did not want anything bad to happen to appellant, and her grandmother told her that appellant could be sent to El Salvador. J.C. continued to

assert under oath, however, that sexual abuse did occur.

On April 23, 2004, the trial court found appellant guilty of the 2001 incident.[1] The judge credited J.C.'s version of events because (1) J.C. harbored no animus toward appellant, (2) J.C.'s testimony was consistent, and (3) the phone cord introduced by appellant as the one J.C. used in 2001 looked "like a brand new cord ..., much unlike the phone itself." After rendering a verdict and articulating the above reasons for the verdict, the trial court told the parties that she was "prepared to go to sentencing" and asked for a pretrial services report. A discussion ensued regarding when to schedule the sentencing hearing, and the judge remarked that she thought the verdict would disrupt the family dynamics. The trial judge then made the following comments:

And I think that it is just unconscionable to me that this little child would have to bear that level of pressure for conduct by an adult that was inappropriate at best and criminal as I have found.... [A]nd in thinking about this as I thought about this yesterday and last night and thought about this this morning, ... there are perhaps, ... some cultural issues that I'm not really clear about. I know that in countries like El Salvador and even, ... in frankly places in the surrounding jurisdiction, there are very young girls who are 12 and 13, 14 and 15 who are married of black descent. And I'm not clear whether or not there is, I don't know, and maybe that's something that counsel can, can help me with that there is a, I'm certainly not suggesting that it's cultural in general, that all people feel this way. But I have not been real clear about the issue of sexualizing young girls at a very early age. And whether or not any of that is happening and whether or not that's part and parcel of, of what was going on here. I don't know when Mr. Mejia came to this country. I don't know how long he had been there, what his status is. Obviously I do appreciate that by virtue of this, because I heard it on the witness stand, there may be some immigration implications that are adverse to him and to his family. But I mean, you know, she is, I mean she's ... a beautiful but little girl. So I am prepared to hear it if you wish to do it now. Otherwise, we'd need to just defer sentencing for a time specific, and then I can hear it then.

Based on these statements, appellant asks that we reverse his conviction and remand his case for a retrial before a different judge. Such statements, it is argued, evidence an appearance of bias against appellant and thereby violated the Code of Judicial Conduct of the District of Columbia Courts. Canon 3(B)(5) of the Code of Judicial Conduct provides that "[a] judge shall perform judicial duties without bias or prejudice. A judge shall not, in the performance of judicial duties, by words or conduct manifest bias or prejudice, including but not limited to bias or prejudice based upon ... national origin...." In addition Canon 3(E)(1), which replaced Canon 3(C)(1) of the 1972 Code, provides

---

1. J.C. also testified that appellant was driving her home in 2003 when he pulled the car over, stated "this is our chance, let's take advantage of it," tried to kiss her and put his hand on her shoulder. J.C. got out of the car, ran to her house and told her grandmother about both incidents. On redirect, she stated that appellant also put his hand on the inside of her knee. The trial judge found appellant not guilty with regard to the 2003 incident. The trial judge stated that she did not have "an abiding conviction with regard to the issue of the touching of the leg. And since touching an arm is not sexual contact, I thought that there was enough discrepancy ... for me not to be comfortable concluding that that did occur."

that "[a] judge shall disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to instances where ... (a) the judge has a personal bias or prejudice concerning a party ... or personal knowledge of disputed evidentiary facts concerning the proceeding...." The goal of Canon 3(E)(1) is "to prevent even the appearance of impropriety." *Scott v. United States*, 559 A.2d 745, 750 (D.C.1989) (referring to Canon 3(C)(1) of the 1972 Code).

 We must view what was said in the complete context of the trial. We may not do so by making a subjective determination. *Id.* at 748–49 ("The necessity for recusal in a case is premised on an objective standard."). We must, rather, decide whether an objective person, informed of the trial proceedings, could reasonably conclude an appearance of bias existed, although in the context of the record, we are inclined to believe that she was seeking the views of counsel at sentencing on the question she broached. *See Belton v. United States*, 581 A.2d 1205, 1214 (D.C. 1990) ("[W]e must ask whether [the judge's] statements ... could lead an objective observer ... reasonably to question the judge's impartiality ....") (citing *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 861, 108 S.Ct. 2194, 100 L.Ed.2d 855 (1988)) (internal quotation marks omitted); *see also Scott, supra,* 559 A.2d at 750 (finding a Canon violation where "from the perspective of the average person, a fully informed person might reasonably question" the judge's impartiality) (internal citation and quotation marks omitted). Though we do not draw any conclusion that the judge had an actual bias which influenced the verdict, or that the musings were not well intentioned, we hold that on this record, an appearance of bias to an informed, objective observer might exist, and the integrity of the judicial process compromised. Therefore, the judgment of conviction is reversed and the case remanded for a new trial if the prosecution so determines, in which event we are confident the case will be assigned to another judge without a directive from this court.

*Reversed and remanded.*