IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 116,968

STATE OF KANSAS,
*Appellee*,

v.

SHELBERT L. SMITH,
*Appellant*.

SYLLABUS BY THE COURT

1.

In reviewing a district court's credibility determination, an appellate court will not reject a negative finding unless the party challenging it proves arbitrary disregard of undisputed evidence, or some extrinsic consideration such as bias, passion, or prejudice.

2.

A court has the power to consider sua sponte an issue for the first time on appeal if it is necessary to serve the ends of justice or to prevent the denial of fundamental rights.

Appeal from Sedgwick District Court; SETH L. RUNDLE, judge. Opinion filed August 17, 2018. Reversed and remanded with directions.

*Richard Ney*, of Ney, Adams & Miller, of Wichita, argued the cause, and *David L. Miller*, of the same firm, was with him on the briefs for appellant.

*Julie A. Koon*, assistant district attorney, argued the cause, and *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, were with her on the brief for appellee.

The decision of the court was delivered by

Nuss, C.J.:  Shelbert Smith appeals the district court's denial of his motion to file a late appeal. Smith argues the court arbitrarily disregarded undisputed testimony that he told his trial counsel he wanted to appeal—evidence that would help him meet an exception to the rule requiring timely appeal. See *State v. Ortiz*, 230 Kan. 733, Syl. ¶ 3, 640 P.2d 1255 (1982). As a result, Smith asks that we reverse the court's decision and allow his appeal to be filed out of time.

We decline to so rule. Instead, because of our concerns that the district court improperly considered irrelevant, outside the record information in deciding Smith's testimony was not credible, we reverse and remand the case to a different judge to make that credibility determination anew.

FACTS AND PROCEDURAL HISTORY

In 1993, 16-year-old Shelbert Smith was convicted as an adult, after pleading no contest to first-degree felony murder, aggravated kidnapping, aggravated robbery, and possession of a firearm by a minor. The judge sentenced Smith to life sentences for the murder and aggravated kidnapping convictions, 10 years to life for the aggravated robbery conviction, and 30 days in jail for the firearm conviction.

At the sentencing hearing Smith's attorney, Max Opperman, made a brief argument that the sentences should be concurrent. The district court was to ultimately disagree. But the court told Smith that the next part of the process would involve his being taken to the Secretary of Corrections for a series of tests and evaluations. The court told Smith that after it received the results, it would determine the "final sentence" in the case.

2

The court continued:

> "I cannot tell you what I'll do at that time. I'll consider all of the factors. Factors I
> must by law. I'll consider your age, I'll consider the facts of the case, and try to do what is
> right with everybody concerned.

> "It will take at least 30 days to get all of the testing done. . . . We'll get you in line
> soon as we can. Your lawyer will keep you informed what is going on here so you'll
> know what my final decision is soon as I've made the decision."

The court was referring to its then-authority to modify a sentence through a 120-day callback. After the enactment of the Kansas Sentencing Guidelines Act, K.S.A. 1993 Supp. 21-4701 et seq., this vehicle for sentence modification was eliminated for crimes committed after July 1, 1993. *State v. Anthony*, 274 Kan. 998, 999, 58 P.3d 742 (2002).

Opperman timely filed a motion for probation or modification of sentence, which the district court denied by a "motion minute sheet" on March 2, 1994. The present record on appeal contains no journal entry or transcript to suggest the court ever held a hearing on the motion. No one filed a direct appeal.

Twenty years after his crimes and convictions, Smith filed a pro se motion to file a direct appeal out of time. He claimed, among other things, that he told Opperman he wanted to appeal but Opperman never acted on that request. This court issued an order remanding to the district court so that, if necessary, it could conduct a hearing under *Ortiz*, 230 Kan. 733, to determine if Smith was eligible to appeal out of time.

At that hearing, the State disclosed Opperman died in 2009. Smith testified that he agreed to plead no contest because Opperman told him the judge was lenient and would consider his age when sentencing. Smith further testified that immediately after his

sentencing hearing, he told Opperman he wanted to appeal but Opperman said to wait until after the 120-day callback. After the 120-day period had passed with no further word from Opperman, Smith began trying to contact Opperman by phone—sometimes two or three times a day for all of 1994. When these efforts proved futile, Smith gave up out of frustration.

The district court made no findings of fact at the end of the *Ortiz* hearing. But it denied Smith's motion to appeal out of time. It stated it simply could not get over "the fact that the defendant waited all these years and said absolutely nothing, did absolutely nothing."

On Smith's appeal, this court ruled that the length of time between Smith telling his attorney to appeal and his attempt to use an *Ortiz* exception to file a late appeal could be a factor in the test to determine Smith's credibility. But contrary to the district court's apparent holding, "standing alone [it] was not a threshold bar to the untimely appeal as a matter of law." *State v. Smith*, 304 Kan. 916, 922, 377 P.3d 414 (2016). So we remanded to the district court for a credibility determination:

> "[W]e are compelled to send this back to the district court once again for the express purpose of determining whether Smith's testimony is credible, *i.e.*, whether he told his attorney to appeal, whether the attorney did not file an appeal, and whether Smith would have appealed if his attorney had not failed to perform. If Smith's testimony is credible, he has established deficient performance under *Flores-Ortega*. [Citation omitted.] A lawyer who disregards specific instructions to file a notice of appeal has acted in a professionally unreasonable manner, and the defendant is entitled to a new appeal without a showing that the appeal would have been successful. 292 Kan. at 209-10 (quoting *Flores-Ortega*, 528 U.S. at 477). *In that event, Smith will be permitted to appeal out of time*." (Emphasis added.) *Smith*, 304 Kan. at 922-23.

4

A second *Ortiz* hearing was held—before a different judge—on December 9, 2016. Once again Smith testified that he told Opperman he wanted to appeal immediately after the sentencing hearing but that Opperman said to wait until after the results of the 120-day callback. According to Smith, although he was 16 at the time of his arrest, he was only in ninth grade because he repeated the sixth. He further testified that he was in special education classes and that his reading and writing skills were low enough that he could not understand novels or books.

Smith elaborated on his attempts to contact Opperman. He testified that he called and left Opperman messages throughout the year of 1994, but that he could not achieve any contact with Opperman after the sentencing hearing. When asked why he did not write letters to Opperman, Smith claimed that his reading and writing skills prevented it. He also testified that he did not write any of the pro se documents later filed with the court. Rather, a "jailhouse lawyer" helped him draft them.

During cross examination, Smith testified that although he stopped trying to contact Opperman, he did not give up on the hope of an appeal. He apparently "tried to get as much as [he] could that pertained to [his] case," until he found someone that could help put the motion together. When questioned further about what he collected over the years or what he was doing, Smith could not provide specifics. The State also pointed out an inconsistency. In Smith's interview conducted shortly after the crimes, he told the police he shot the victim. But in his motion to appeal out of time, he indicated that he was not the shooter.

New testimony revealed that Smith also enlisted his mother and grandmother to contact Opperman on his behalf. These attempts were equally unsuccessful and only resulted in promises to call back from Opperman's secretary. Although Smith's mother is deceased, his grandmother testified.

5

According to his grandmother, she tried to reach Opperman 5 or 10 times. But she was only ever able to reach his secretary. If she had been able to get through, she simply would have told Opperman to call Smith. She testified Opperman never returned her calls.

Six days after the second *Ortiz* hearing, on December 15, 2016, the district court issued its decision. It held Smith's testimony was not credible. The court held that it did not believe Smith ever asked Opperman for an appeal, nor did it believe that Smith would have appealed but for Opperman's failure to do so. To support its conclusion about Smith's lack of credibility, the court made 13 observations, which include

- Smith's confession and the factual basis for the no contest plea contradicts his later assertions, suggesting dishonesty;
- the level of organization, planning, and behavior required for the crime are inconsistent with the inability to file a notice of appeal if desired;
- Smith's demeanor throughout his multiple court appearances did not convey credibility;
- Smith's affidavit of indigence was signed and dated in a script inconsistent with illiteracy, thus his testimony on that point was not credible;
- the motion for out of time appeal contains a break in the narrative from third to first person, intimating that Smith himself drafted parts of the motion contrary to his testimony;
- Smith's testimony that his attorney told him he would be unlikely to go to jail was not credible as an attorney would not have given this advice in a case involving these facts, such as murder and aggravated kidnapping;
- Smith presents conflicting theories in his motion to appeal out of time;

6

> – if Smith wanted to appeal it is not credible that he would not have been successful in arranging it through his family or friends;
>
> – finally, the sheer amount of time and Smith's inaction make his testimony incredible because they are consistent with a defendant who "was caught red-handed by his own confession, knew he had no legitimate grounds for relief on appeal, and therefore decided not to pursue an appeal."

Smith appealed the court's decision denying his motion to appeal out of time. We have jurisdiction under K.S.A. 2017 Supp. 22-3601 (life sentence).

ANALYSIS

Issue: *The district court's improper consideration of irrelevant, outside the record information has the appearance of judicial bias and prejudice.*

The last time Smith was before this court, we established that if his testimony was credible, then he has fulfilled the requirements for the third *Ortiz* exception and can appeal out of time. *Smith*, 304 Kan. at 922-23. Our remand instructions were clear. Indeed, the district court set them out verbatim at the beginning of its December 15, 2016, journal entry denying Smith's motion to file a late appeal:

> "This case was remanded 'for the express purpose of determining whether Smith's testimony is credible, *i.e.*, whether he told his attorney to appeal, whether the attorney did not file an appeal, and whether Smith would have appealed if his attorney had not failed to perform.' *State v. Shelbert L. Smith*, No. 110,061, slip op. at 9 (Kan., Aug. 5, 2016)."

As a result, the sole issue before us is whether the district court was successful in that effort.

7

*Standard of review*

Typically, we apply a dual standard of review for a district court's ruling on whether an *Ortiz* exception applies. We review the facts underlying the court's ruling for substantial competent evidence but review de novo the legal conclusion on whether the exception applies. *Smith*, 304 Kan. at 919; *State v. Zachary Smith*, 303 Kan. 673, 677, 366 P.3d 226 (2016).

However, here we are reviewing the district court's determination that Smith is not credible and so did not meet his burden of proof. We will not reject such a negative finding on appeal unless the party challenging it "'proves arbitrary disregard of undisputed evidence, or some extrinsic consideration such as bias, passion, or prejudice.'" *Zachary Smith*, 303 Kan. at 679.

*Discussion*

Smith argues that the court arbitrarily disregarded the undisputed evidence—especially presented by his grandmother. Although her testimony that she tried to contact Opperman on Smith's behalf is not definitive, it would certainly corroborate Smith's testimony. And we see no mention of her testimony in the district court's findings, leading us to wonder if the court arbitrarily disregarded it.

We need not perform that particular analysis today, however. Instead, enough evidence exists for us to independently raise a different component of our standard of review of the negative finding. See *State v. Washington*, 275 Kan. 644, 68 P.3d 134 (2003).

"Ordinarily, the appellate court will not consider an issue which has not been raised before the trial court and which has not been raised by the parties on appeal. However,

8

we have the power to consider *sua sponte* an issue for the first time on appeal if to do so is necessary to serve the ends of justice or to prevent the denial of fundamental rights." 275 Kan. at 677 (citing *State v. Puckett*, 230 Kan. 596, 600-01, 640 P.2d 1198 [1982]).

Specifically, two actions of the district court trouble us, which—given our standard of review—suggest bias or prejudice sufficient to corrode our confidence in its ultimate ruling that Smith is not credible. See *Zachary Smith*, 303 Kan. at 679. The first is a statement it made at the December 9, 2016, hearing when the court presented a questionable basic dichotomy:

> "The—I guess the credibility assessment is, I have to decide whether it is more likely than not, that basically one of two things happened here:  One was that this was a young man who for whatever reason decided that he wanted to go do the rest of his life in prison because he was tough and *that was what he was going to do because that's what people did in the music that he was listening to*. And the alternative is that he did exactly what he said he did, and told his attorney he wanted an appeal." (Emphasis added.)

But per the record on appeal, the issue of Smith's musical preference had never been mentioned before the court. And we can find no evidence in the record to point to what his musical preferences might have been in 1993 when he was 16 years old. Under Supreme Court Rule 601B, Canon 2, Rule 2.9(C) (2018 Kan. S. Ct. R. 440), "A judge . . . shall consider only the evidence presented and any facts that may properly be judicially noticed." Contrary to the rule, no such evidence was presented nor was any court effort made to take judicial notice under K.S.A. 60-409 or 60-410. In any event, taking judicial notice of a defendant's musical taste in this context is unlikely to meet the statutory requirements. See *Weigand v. Union Nat'l Bank of Wichita*, 227 Kan. 747, 755, 610 P.2d 572 (1980) (improper for trial court to take judicial notice of the reputation of particular individual because personal reputation not a matter of such "'generalized knowledge'" that it cannot reasonably be the subject of dispute). Indeed, in response to a court question during oral arguments, counsel for the State frankly admitted, "[D]id the

9

defendant testify about the music he listened to? No. So clearly this is an assumption made by the judge."

Moreover, even if such evidence had been presented or had properly been judicially noticed, Smith's musical preferences are irrelevant to what we made clear—and the district court itself acknowledged—was the material issue before that court:  his credibility. K.S.A. 60-401(b) defines relevant evidence as evidence having any tendency in reason to prove any material fact. See *State v. Walters*, 284 Kan. 1, 8, 159 P.3d 174 (2007) ("A material or logical connection between the asserted facts and the inference or result they are intended to establish is necessary to establish relevance."). Here, as in *State v. Bornholdt*, the evidence is not relevant because its connection to the material issue "requires an unrealistic leap of faith." 261 Kan. 644, 660, 932 P.2d 964 (1997).

Finally, it appears the judge was inappropriately applying a negative stereotype in connecting choice of music to refusal to appeal. Judicial bias or prejudice through words or conduct is prohibited by Supreme Court Rule 601B, Canon 2, Rule 2.3(B) (2018 Kan. S. Ct. R. 436). And Comment [2] explains "[e]xamples of manifestations of bias or prejudice include . . . negative stereotyping; . . . suggestions of connections between race, ethnicity, or nationality and crime; and irrelevant references to personal characteristics." See *Mejia v. United States*, 916 A.2d 900, 903 (D.C. 2007) (appellate court concluded trial court's musings regarding generalized sexual practices of some people in El Salvador demonstrated appearance of judicial bias during sentencing of defendant convicted of misdemeanor sexual abuse).

The second troubling action taken by the court was its order—apparently issued sua sponte—transmitted electronically by the judge's assistant to the Kansas Department of Corrections (DOC) to produce records of Smith's "tattoos and brands." In particular, the court demanded a "comprehensive list of all described tattoos or brands, along with

any photographs of same." This list and photo were provided to the court via email to the judge's assistant within hours of the order's submission to DOC on December 12, 2016— three days after Smith's hearing and three days before the court's denial of his motion to file a late appeal. At oral arguments, counsel for the State candidly conceded she was unable to provide justification or explanation for the lower court's order for this information.

Just as with Smith's taste in music, the record contains no mention of his tattoos or brands during his hearings. As mentioned, under Supreme Court Rule 601B, Canon 2, Rule 2.9(C) (2018 Kan. S. Ct. R. 440), "A judge . . . shall consider only the evidence presented and any facts that may properly be judicially noticed." Additionally, nothing in the record reveals the court attempted to meet the substantive requirements of judicial notice. See, e.g., K.S.A. 60-409(b)(4) ("specific facts and propositions of generalized knowledge which are capable of immediate and accurate determination by resort to easily accessible sources of indisputable accuracy").

Nor did the court attempt to meet the procedural requirements allowing it to take judicial notice. K.S.A. 60-412(d) provides that the judge "shall afford the parties reasonable opportunity to present information relevant to the propriety of taking such judicial notice and to the tenor of the matter to be noticed." See also K.S.A. 60-410(a). And as with his music, Smith's tattoos and brands are irrelevant to the credibility determination with which the district court acknowledged it was ordered by this court to perform.

Additionally, although no explanation appears in the record—and none could be supplied by the State at oral arguments—it again appears the judge was inappropriately applying a negative stereotype: people exhibiting such markings are not credible. See Supreme Court Rule 601B, Canon 2, Rule 2.3, Comment [2]. After reviewing the district

11

court record, we have found only one indication the parties could have been aware that Smith's tattoos and brands were an issue, i.e., when the court order to DOC (together with DOC's attached response listing the tattoos) was filed with the court clerk at 8:56 a.m. on December 14—merely one day before the order denying Smith's motion was filed at 9:20 a.m.

Furthermore, this independent factual research by the court is itself inappropriate. According to Supreme Court Rule 601B, Canon 2, Rule 2.9(C) (2018 Kan. S. Ct. R. 440), "A judge shall not investigate facts in a matter independently." The prohibition extends to the judge's staff. Rule 2.9(D) provides "[a] judge shall make reasonable efforts, including providing appropriate supervision, to ensure that this Rule is not violated by court staff, court officials, and others subject to the judge's direction and control." And finally, Comment [6] makes clear the prohibition covers many types of efforts: "The prohibition against a judge investigating the facts in a matter extends to information available in all mediums, including electronic." (2018 Kan. S. Ct. R. 441.)

See, e.g., *Rutanhira v. Rutanhira*, 190 Vt. 449, 455-56, 35 A.3d 143 (2011) (holding it was error for the district court to conduct its own investigation and rely on information taken from outside of the proceeding because it deprives the parties of the opportunity to respond and test any of the information acquired through this examination). "'In conducting its own independent factual research, the court improperly went outside the record in order to arrive at its conclusions, and deprived the parties [of] an opportunity to respond to its factual findings.'" *Matter of Justice v. King*, 60 A.D.3d 1452, 1453-54, 876 N.Y.S.2d 301 (2009) (quoting *NYC Med. & Neurodiagnostic, P.C. v. Republic W. Ins. Co.*, 8 Misc. 3d 33, 38, 798 N.Y.S.2d 309 [2004]; see also *Tribbitt v. Tribbitt,* 963 A.2d 1128, 1131 (Del. 2008) ("[I]n determining the Wife's earning capacity, the Family Court committed reversible error when it rejected unrefuted testimony by the Husband's expert and substituted for that testimony the results of its own internet

search"); *In Matter of Rokowski,* 168 N.H. 57, 61-62, 121 A.3d 284 (2015) (holding trial court erred because it relied, in part, upon its own internet research for determining marital home's value; trial court's distribution of marital property vacated); *Ney v. Ney*, 917 A.2d 863, 868 (Pa. Super. Ct. 2007) ("It is apparent that the trial court found that Father willfully failed to seek appropriate employment based upon its own internet job search"; appellate court concluded the trial court abused its discretion when it considered and relied on this evidence.).

Granted, our record does not conclusively show that the district court actually relied on the irrelevant tattoo and brand information it retrieved independently—and may not have effectively shared with counsel and the parties before denying Smith's motion to file a late appeal. Nor does it conclusively show the court in fact relied on its irrelevant "assumption" about the music Smith listened to. But a judge must avoid even "conduct that may reasonably be perceived as prejudiced or biased." Supreme Court Rule 601B, Canon 2, Rule 2.3, Comment [2] (2018 Kan. S. Ct. R. 436). And this information (particularly the assumption) was obviously at least considered by the court.

That judicial consideration, coupled with: (1) the puzzling circumstances in which Smith's tattoos and brand information was acquired by the court three days after his hearing and (2) the court's failure under Kansas statute to provide the parties reasonable opportunity to respond to it before denying Smith's motion—lend credence to the appearance of bias and prejudice. That negative appearance undermines our confidence in both the court's determination of Smith's lack of credibility and in the fairness of the proceeding itself. See Supreme Court Rule 601B, Canon 2, Rule 2.3, Comment [1] (2018 Kan. S. Ct. R. 436) ("A judge who manifests bias or prejudice in a proceeding impairs the fairness of the proceeding and brings the judiciary into disrepute."); see also *Wang v. Attorney General of United States*, 423 F.3d 260, 269 (3d Cir. 2005) (the assurance that the arbiter is not predisposed to find against a person "is absent—and judicial conduct

improper—whenever a judge appears biased, even if she actually is not biased") (citing *In re Antar*, 71 F.3d 97, 101 [3d Cir. 1995], and *Liteky v. United States*, 510 U.S. 540, 548, 114 S. Ct. 1147, 127 L. Ed. 2d 474 [1994]).

As the United States Supreme Court similarly declared just two years ago in *Williams v. Pennsylvania*:

> "An insistence on the appearance of neutrality is not some artificial attempt to mask imperfection in the judicial process, but rather an essential means of ensuring the reality of a fair adjudication. Both the appearance and reality of impartial justice are necessary to the public legitimacy of judicial pronouncements and thus to the rule of law itself." 579 U.S. __, 136 S. Ct. 1899, 1909, 195 L. Ed. 2d 132 (2016).

In closing, we observe the case of *Mejia,* 916 A.2d 900, contains some parallels to the district court's "assumption" about Smith's music tastes—and their purported connection to a refusal to appeal. There, the trial court mused about generalized sexual practices of some people in El Salvador during Mejia's sentencing for misdemeanor sexual abuse of his nine-year-old niece. The appellate court concluded this alone demonstrated an appearance of judicial bias and thus reversed his conviction.

> "Though we do not draw any conclusion that the judge had an actual bias which influenced the verdict, or that the musings were not well intentioned, we hold that on this record, an appearance of bias to an informed, objective observer might exist, and the integrity of the judicial process compromised. Therefore, the judgment of conviction is reversed and the case remanded for a new trial if the prosecution so determines, in which event we are confident the case will be assigned to another judge without a directive from this court." 916 A.2d at 903.

"A witness' credibility is a determination for the district court to make." *Smith*, 304 Kan. at 922. So we reverse and remand to that court but to a different judge. And we

14

caution that jurist to consider only evidence in the record that is relevant to Smith's credibility.

Reversed and remanded with directions.