IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 123,856

STATE OF KANSAS,
*Appellee*,

v.

SHELBERT SMITH,
*Appellant*.

SYLLABUS BY THE COURT

1.

Under the doctrine of law of the case, once an issue is decided by the court, it should not be relitigated or reconsidered unless it is clearly erroneous or would cause manifest injustice.

2.

The law of the case doctrine is a discretionary policy which expresses the practice of the courts generally to refuse to reopen a matter already decided, without limiting their power to do so.

3.

The law of the case doctrine applies not only to matters actually decided in a prior stage of the proceeding, but also to matters for which the party failed to seek review in that prior stage.

4.

Although a party cannot stipulate to appellate jurisdiction, the law of the case doctrine may apply when a party adopts a jurisdictional position in one stage of a case and then later seeks to contradict it.

5.

In the absence of newly discovered facts or controlling caselaw, an issue neither briefed nor argued on appeal is deemed to have been abandoned in both an instant appeal and in future appeals within the same case.

Appeal from Sedgwick District Court; PAUL CLARK, judge. Opinion filed June 3, 2022. Appeal dismissed.

*Richard Ney,* of Ney & Adams, of Wichita, argued the cause and was on the briefs for appellant.

*Lance Gillett*, assistant district attorney, argued the cause, and *Boyd K. Isherwood,* assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, were on the brief for appellee.

The opinion of the court was delivered by

WILSON, J.: The critical issue in this case is whether a criminal defendant may file a second direct appeal to assert claims that would have existed at the time the first appeal was filed, when such claims were either not raised or abandoned in his first direct appeal. We hold he cannot. Because we lack jurisdiction over Smith's untimely appeal, we dismiss it.

FACTS AND PROCEDURAL BACKGROUND

This case represents Smith's fourth appearance before this court and his second overall attempt to appeal his sentences. We set forth the factual and procedural background of Smith's case in *State v. Smith*, 304 Kan. 916, 377 P.3d 414 (2016) (*Smith I*), *State v. Smith*, 308 Kan. 778, 423 P.3d 530 (2018) (*Smith II*), and *State v. Smith*, 312 Kan. 876, 482 P.3d 586 (2021) (*Smith III*). We summarize this history again here.

In 1993, when he was 16 years old, Smith killed Cleo Bell. He was later arrested and charged with various crimes related to the homicide. Smith ultimately pled nolo contendere to first-degree murder, aggravated kidnapping, aggravated robbery, and possession of a firearm by a minor. About a month later, in December 1993, Smith was sentenced and a journal entry reflecting that sentence was filed.

Smith timely moved for sentence modification. (At the time, a motion to modify sentence was contemplated under K.S.A. 1992 Supp. 21-4603[4].) The district court denied the motion without explanation in a "motion minutes sheet" (MMS), which was filed in the record. The district court did not check a box on the MMS stating that the MMS was a "journal entry," instead directing the State to prepare a journal entry "reflecting" the court's ruling. The prosecutor was not aware of the MMS and no further memorialization of the court's ruling on the motion was filed. Smith's trial counsel never filed an appeal on Smith's behalf.

In 2013, Smith filed in district court a pro se notice of appeal, motion to appeal out of time, and motion for appointed counsel. After counsel was appointed for Smith, this court ordered Smith to show cause why his appeal should not be dismissed for lack of jurisdiction. Smith argued this court did have jurisdiction to hear his late appeal because

3

an exception to the general rule disallowing late appeals applied in his case. Smith asserted that he should be able to file a late appeal since his attorney failed to appeal despite Smith's instruction for him to do so, which, if proven, would allow a late appeal under the third of three exceptions set forth in *State v. Ortiz*, 230 Kan. 733, 735-36, 640 P.2d 1255 (1982). *Smith I*, 304 Kan. at 917-18. Lacking a sufficient factual basis to rule on Smith's assertions, this court remanded the case to district court for a hearing. The district court held an *Ortiz* hearing and denied Smith's motion.

Smith timely appealed the district court's denial of his motion but advanced no argument about the other two *Ortiz* exceptions. Nor did Smith claim that the appeal was otherwise timely. The *Smith I* court accepted this framing:

> "There is no question that Smith's appeal was filed past the statutory deadline and that the general rule would result in its dismissal. But *Ortiz* created judicial exceptions to the general rule barring untimely appeals. Under those exceptions, an untimely appeal may be allowed when: (1) the defendant was not informed of his or her right to appeal; (2) the defendant was not furnished an attorney to pursue the appeal; or (3) the defendant was furnished an attorney who failed to perfect the appeal.

> . . . .

> "Here, Smith asserts that he falls under the third *Ortiz* exception . . . . [Citations omitted.]" *Smith I,* 304 Kan. at 919-20.

We also take judicial notice under K.S.A. 60-409(b)(4) that Smith's brief in *Smith I* argued he "qualified for a late appeal based upon the third exception: he had been furnished an attorney who failed to perfect an appeal," and asked the court to find that he "should be allowed an out of time appeal from sentencing." Because we still required

4

additional findings of fact in order to determine the ultimate issue of whether Smith should be allowed to file a late appeal, we remanded the case to the district court for a second *Ortiz* hearing.

In the proceedings that followed remand, Smith continued to litigate the third *Ortiz* exception without addressing the other two and without claiming that the appeal was timely. The district court again rejected Smith's attempt to appeal out of time, finding that he lacked credibility.

Smith again appealed the district court's denial of his motion to file a late appeal. In *Smith II*, this court again reversed the district court for basing its credibility determination on irrelevant considerations and remanded the matter to a different judge with specific instructions "to consider only evidence in the record that is relevant to Smith's credibility." *Smith II*, 308 Kan. at 789.

At the third *Ortiz* hearing, Smith presented new evidence on his third *Ortiz* exception claim. But he also advanced two new theories to support the exercise of appellate jurisdiction: his claim that the district court's failure to file a journal entry rendered his appeal timely, and his alternative claim that his untimely appeal should be considered anyway, under the first *Ortiz* exception, because he was never informed of his appellate rights. After hearing evidence—including the testimony of licensed psychologist Dr. Brian Stone, who discussed Smith's IQ and ability to process and comprehend verbal and written language—the district court denied Smith's motion once more. The district court again found that Smith lacked credibility and that the *Smith II* mandate precluded consideration of his newly raised issues. But the district court also noted that the facts relating to Smith's missing journal entry argument "are not in dispute"

and represented that it had "attempted to make relevant findings of fact" on the first *Ortiz* exception claim "in an effort to aid in the efficient resolution of this issue."

Smith again appealed. This time, we affirmed the district court's decision that Smith lacked credibility. *Smith III*, 312 Kan. at 889. In rejecting Smith's ability to raise new issues following the *Smith II* remand, we wrote:

"The mandate rule does not constitute an inflexible jurisdictional barrier to a party's ability to raise a new issue following a remand, but where a remand order is stated in specific terms following deliberate litigation choices by the parties—choices reinforced, in the present case, over two prior *Ortiz* hearings and two prior appeals—the parties are not free to endlessly expand on the issues the district court may consider in the absence of new (or newly discovered) facts. Here, Smith had two previous *Ortiz* hearings and two previous appeals in which to present these issues; his failure to do so led the *Smith I* and *Smith II* courts to winnow the pertinent issues for the district court's consideration down to the singular issue of Smith's credibility vis-à-vis the third *Ortiz* exception. Under these facts, we believe the district court correctly refused to consider Smith's first *Ortiz* exception and missing journal entry claims." *Smith III*, 312 Kan. at 886-87.

Smith filed this appeal shortly after *Smith III*, with no intervening events at the district court. Besides recapitulating his journal entry and first *Ortiz* exception claims, he now sets forth the substantive basis for his appeal: that his sentence violated the Eighth Amendment, as interpreted by *Miller v. Alabama*, 567 U.S. 460, 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012), and *Montgomery v. Louisiana*, 577 U.S. 190, 136 S. Ct. 718, 193 L. Ed. 2d 599 (2016). We now turn to those arguments.

ANALYSIS

Smith's present appeal—his second overall attempt to appeal his sentence, and his fourth appearance here—arises nearly 30 years after his sentencing. It also follows close on the heels of the nearly eight year-long litigation process that encompassed Smith's first attempt to appeal. As noted, nothing took place at the district court between the publication of *Smith III* and Smith's current appeal. Indeed, we had not even issued a mandate for *Smith III* by the time Smith filed this appeal. Thus, we begin and end by considering our appellate jurisdiction.

Smith appears to assume his second appeal begins with a blank slate, making all appellate jurisdictional theories—other than those addressed in *Smith I*, *Smith II*, or *Smith III*—fair game for our review. But the legal choices Smith made throughout his first appeal—particularly the litigation of *Smith I* and *II*—did not simply evaporate with the final denial of his motion to appeal out of time in *Smith III*, where we also refused to consider his newly raised jurisdictional theories based on the mandate rule. Those same choices compel us to reject Smith's appeal once again.

*Smith's prior framing of his appeal as untimely is now the law of the case*.

Smith now attempts to argue his appeal is timely, because the statute in effect at the time, commonly called the "120-day callback," allowed Smith a period of time to request modification of his sentence. See K.S.A. 22-3608(1) (Ensley 1988) (granting a defendant "10 days after the expiration of the district court's power to modify the sentence" in which to appeal—a power provided to the district court by K.S.A. 1992 Supp. 21-4603[4], albeit only for crimes committed before July 1, 1993); *State v. Anthony*, 274 Kan. 998, 999, 58 P.3d 742 (2002).

Smith's attorney timely moved to modify sentence. The district court denied the motion within 120 days of sentencing, but did so in an MMS that, by its own terms, contemplated the filing of a later journal entry. No one ever filed a subsequent journal entry, and to date the MMS represents the last action taken on Smith's motion to modify sentence. Under these circumstances, Smith claims that his time to appeal has not yet expired because the district court never filed a final journal entry of sentencing.

But this position contradicts the way Smith framed the initial appeal from the denial of his first motion to appeal out of time—indeed, it contradicts the entire premise of that motion. By framing his argument in *Smith I* around the idea that his appeal was untimely, Smith set judicial focus firmly on exceptions to the general rule prohibiting untimely appeals. No newly discovered facts or recent changes in the law underlie his journal entry argument. See *Smith III*, 312 Kan. at 886. Thus, nothing stopped Smith from advancing this argument in *Smith I*, even if it would have represented an inconsistent position from his *Ortiz* exception claim. Smith maintained his stance that the appeal was untimely throughout *Smith II*, as well; he only raised his timeliness argument for the first time at the third *Ortiz* hearing, even though it fell outside the limited scope of remand set forth in the *Smith II* mandate.

In similar situations, we have refused to consider issues presented in a new appeal that either were raised or could have been raised in previous appeals. See *State v. Conley*, 287 Kan. 696, 698, 197 P.3d 837 (2008) (motions to correct illegal sentence are subject to res judicata and thus "may not be used to breathe new life into an appellate issue previously adversely determined"); *State v. Johnson*, 269 Kan. 594, 602, 7 P.3d 294 (2000) (same). Indeed, "Where a defendant's claim has not been raised at trial or on direct

appeal, such a default prevents the defendant from raising the claim in a second appeal or a collateral proceeding." *State v. Neer*, 247 Kan. 137, 141, 795 P.2d 362 (1990).

More recent opinions have clarified that res judicata does not apply to successive appeals within the same overall case. See *State v. Kleypas*, 305 Kan. 224, 242, 382 P.3d 373 (2016). Such arguments are more properly characterized as falling under the law of the case doctrine.

> "Under the doctrine of law of the case, . . . '[t]his court is firmly committed to the rule that the trial court cannot be required to either again review and pass upon what it has already determined or ignore its previous ruling.' '[O]nce an issue is decided by the court, it should not be relitigated or reconsidered unless it is clearly erroneous or would cause manifest injustice.' But law of the case doctrine is 'a discretionary policy which expresses the practice of the courts generally to refuse to reopen a matter already decided, without limiting their power to do so.' [Citations omitted.]" *Venters v. Sellers*, 293 Kan. 87, 99, 261 P.3d 538 (2011).

The law of the case doctrine not only applies to matters decided in a prior stage of proceedings in the same case, but also to matters for which the party failed to seek review in those prior stages. *State v. Parry*, 305 Kan. 1189, 1195, 390 P.3d 879 (2017). Consequently, when the *Smith I* court—relying on Smith's briefing—wrote that "[t]here is no question that Smith's appeal was filed past the statutory deadline and that the general rule would result in its dismissal," that framing became the law of the case going forward. *Smith I*, 304 Kan. at 919. Moreover, while a party cannot stipulate to appellate jurisdiction, the law of the case doctrine may apply when a party adopts a jurisdictional position in one stage of a case and then later seeks to contradict it. See *State v. Edwards*, No. 109,647, 2016 WL 3659639, at *4 (Kan. 2016) (unpublished opinion). Thus, we

decline to consider Smith's new framing now, nearly six years—and three opinions—later.

*Smith's abandonment of his first* Ortiz *exception claim precludes consideration of it now.*

We next turn to Smith's argument that, under the first *Ortiz* exception, we can exercise appellate jurisdiction over his untimely appeal. As we noted in *Smith III*, "Smith has taken somewhat inconsistent positions regarding whether his first *Ortiz* exception claim was 'newly' raised"—specifically, by arguing that his initial pro se motion to appeal out of time had alluded to this argument, and by alternatively claiming that it "'had never been raised before.'" *Smith III*, 312 Kan. at 883-84.

Under either characterization, though, Smith's singular focus on the third *Ortiz* exception during *Smith I* and *II* represents his abandonment of any claim under the first *Ortiz* exception. "It is well settled that an issue neither briefed nor argued on appeal is deemed to have been abandoned. In such circumstances, nonaction is considered to constitute abandonment. [Citations omitted.]" *State v. Edwards*, 260 Kan. 95, 98, 917 P.2d 1322 (1996); see also *In re M.F.*, No. 106,031, 2012 WL 309323, at *2 (Kan. App. 2012) (unpublished opinion) (citing *Edwards* for the proposition that "[a] party who abandons an issue in a prior appeal cannot use that issue as a basis for a subsequent appeal"). As with his journal entry argument, his first *Ortiz* exception claim relies on no newly discovered facts or recent caselaw; consequently, nothing prevented him from raising it in *Smith I*. His failure to do so precludes his ability to raise it now.

In *Smith III*, we noted that, under the mandate rule, "where a remand order is stated in specific terms following deliberate litigation choices by the parties . . . the parties are not free to endlessly expand on the issues the district court may consider in the

10

absence of new (or newly discovered) facts." *Smith III*, 312 Kan. at 886. Smith's abandonment of an issue he could have raised in his initial appeal also forecloses his ability to "endlessly expand on the issues" by filing new motions to appeal out of time.

As noted, the preclusion doctrines that lead us to reject Smith's second appellate attempt are discretionary. But the extensive history of this case and the numerous uncertainties about the merits of Smith's jurisdictional theories—let alone the merits of his underlying substantive claim—supports our exercise of that discretion now. We thus reject Smith's second attempt to appeal his sentence for lack of appellate jurisdiction.

CONCLUSION

Because Smith fails to establish that we have appellate jurisdiction, we deny Smith's second overall attempt to appeal his sentence.

Appeal dismissed.