NOT DESIGNATED FOR PUBLICATION

No. 126,373

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Parentage of
M.S. and J.C.

MEMORANDUM OPINION

Appeal from Johnson District Court; JOANN WOLTMAN, judge. Submitted without oral argument. Opinion filed July 11, 2025. Affirmed.

*Richard P. Klein*, of Olathe, for appellant natural mother.

No appearance by appellee natural father.

Before HURST, P.J., ATCHESON and ISHERWOOD, JJ.

PER CURIAM: In this paternity case, the Johnson County District Court ordered that Father select a pediatrician to care for his two young sons and that he and Mother follow the physician's recommendations on what vaccinations the children should receive. Mother has appealed and principally contends the order violates her rights protected in the Free Exercise Clause of the First Amendment to the United States Constitution and in the Due Process Clause of the Fourteenth Amendment because she has religious objections to some vaccines. We affirm the district court. The order reasonably resolved a personal disagreement between Father and Mother over one aspect of their children's care by deferring to a physician's professional judgment and therefore did not entail state action triggering the constitutional protections Mother has invoked.

1

We offer a condensed history of this action and the relationship between Mother and Father focused on the comparatively narrow issues on appeal. Mother and Father have periodically lived together, but they never married. They share joint legal custody of their children with Mother having primary residential custody and Father having significant parenting time. The parenting plan requires joint decision-making on major issues affecting the children, including health care, except for emergencies. The plan does not specifically address vaccinations.

Leading up to the event precipitating this dispute, the children did not have a regular pediatrician and typically were taken to walk-in clinics if they needed routine medical attention. Mother did not have the children vaccinated based on her religious beliefs. Father was aware of Mother's position on vaccinations.

In March 2022, a dog bit the older child, and Mother took him to a clinic for treatment. She declined the physician's recommendation that the boy receive a tetanus shot that would have been administered with vaccines for diphtheria and pertussis. Soon afterward, Father had both children vaccinated for tetanus, diphtheria, and pertussis without notifying or consulting Mother.

That prompted Mother to file a motion with the district court for an order precluding any further vaccinations of the children. Each parent filed a prehearing brief with the district court. The district court held a hearing in March 2023, and both parents testified and presented other evidence.

During the hearing, Mother testified she is a Christian but does not belong to a particular church. Based on her reading of the Scriptures, she objects to vaccines cultured using fetal tissue. She explained this relates to Biblical teachings on the sanctity of life

2

that are in her view antithetical to abortion. Mother also testified that she opposes vaccines containing bovine serum and monkey kidney cells. Later in her testimony, Mother referred generally to vaccines made with "unclean animal DNA" that were objectionable given her reading of the Bible. Mother's description of her objections to vaccines—based on how they have been developed or manufactured—would not necessarily preclude all childhood vaccinations. The record suggests Mother objects to most, if not all, of them. She identified none she finds acceptable.

At the time of the hearing, the children were six and four years old. Mother testified she obtained religious exemptions to place the children in licensed daycare facilities and to enroll them in public schools even though they had not been vaccinated. We do not understand Mother to be challenging the basic safety or efficacy of childhood vaccinations generally or the ones Father had administered to the children specifically. Father testified he wanted the children to receive the usual childhood vaccinations.

In a written ruling issued shortly after the hearing, the district court directed Father to "engage[] . . . a primary care pediatrician" for the children and to promptly obtain a recommendation from the physician for vaccinating the children. The district court ordered Mother and Father to comply with that recommendation and characterized the resolution as being in the children's "best interests." The district court also addressed details of the parenting plan and aspects of the children's supervision that are not relevant to this appeal. The district court granted Mother a 90-day stay of the order for selecting a physician and following their vaccination recommendations; the stay has expired. Mother has appealed and duly filed a brief. Father has filed nothing with us.

*Framing the Issue and Standard of Review*

The legal issue and practical problem we face, just as the district court did, is this: When a mother and father subject to a parenting plan disagree about vaccinating their children, how should that dispute be resolved? The parents are at loggerheads over a matter that cannot be resolved with a workable compromise. Either the children are vaccinated or they are not. Other disputes, like the allocation of parenting time, lend themselves to myriad middle-ground solutions. Here, each parent at least tacitly concedes the other is a loving and appropriate caregiver for the children. Father is not seeking exclusive legal custody, primary residential custody, or a change in parenting time.

In a paternity proceeding, the district court must be guided by "the best interest of the child" in entering orders governing custody, residency, and parenting time and in considering the terms of an appropriate parenting plan. K.S.A. 23-2215(d); *State, ex rel. Secretary, DCF v. M.R.B.*, 313 Kan. 855, 865, 491 P.3d 652 (2021). Any judicial modification of those orders must likewise promote the best interest of the children. See K.S.A. 23-2215(d). The determination takes account of all circumstances relevant to the specific issue and typically rests within the district court's sound judicial discretion. *Harrison v. Tauheed*, 292 Kan. 663, 672, 256 P.3d 851 (2011).

In turn, appellate courts review those rulings for abuse of discretion. *Harrison*, 292 Kan. 663, Syl. ¶ 1. The standard is an accommodating one requiring reversal only if the district court has misapplied the controlling facts, misunderstood the controlling law, or has reached a conclusion no reasonable judicial officer would in comparable circumstances. *Jennings v. Shauck*, 318 Kan. 711, 714, 547 P.3d 524 (2024); *Biglow v. Eidenberg*, 308 Kan 873, 893, 424 P.3d 515 (2018). The issue here is much narrower than legal or residential custody. We have no reason to think an abuse of discretion

standard would be inapplicable. Mother bears the burden of establishing an abuse of discretion. *Gannon v. State*, 305 Kan. 850, 868, 390 P.3d 461 (2017).

On appeal, Mother misframes the district court's order as directing that the children be vaccinated. But that's not how the district court resolved the dispute. Rather, the district court deferred the decision to the professional judgment of a pediatrician Father would select as the primary medical care provider for the children. What vaccinations a child should receive bears directly on their health and general welfare and entails medical decision-making. We presume a pediatrician licensed in Kansas to be competent to make such recommendations as would promote their patient's overall well-being. See *In re E.E.B.*, No. 124,937, 2022 WL 17172068, at *4 (Kan. App. 2022) (unpublished opinion). As a means of resolving the dispute between Mother and Father, we do not see the district court's directive to follow a physician's recommendation as an abuse of discretion. The district court's order appears to have modified the parenting plan by giving Father unilateral authority to select a regular pediatrician for the children. But Mother has not challenged the ruling on that basis.

*District Court Ruling Not Moot*

The record on appeal does not include detailed information about what has happened since the district court entered its order. At a later hearing, Father indicated the children had received some vaccinations. For the sake of argument, we assume the pediatrician recommended both children receive most or all of the age-appropriate vaccinations, and they have been vaccinated.

Regardless of how we decide this appeal, the children could not have their vaccinations magically undone. Superficially, that might suggest the legal dispute has become moot, and we should either request the parties to address mootness or remand to the district court for an appropriate hearing. See *State v. Montgomery*, 295 Kan. 837, 840-

5

41, 286 P.3d 866 (2012) (controversy becomes moot when judicial resolution of issue would no longer affect parties' legal rights or alter their legal relationship). In a recent decision, a divided Kansas Supreme Court held mootness to be a jurisdictional bar and retreated from authority characterizing it as a prudential doctrine to be applied as a matter of judicial discretion. *State v. Phipps*, 320 Kan. ___, 2025 WL 1779842, at *1 (2025). Accordingly, we are obligated to consider possible mootness here. *City of Shawnee v. Adem*, 314 Kan. 12, 14, 494 P.3d 134 (2021) (appellate court should question jurisdiction even if parties have not).

The *Phipps* court recognized that mootness, as a jurisdictional bar, often will be a fact-specific determination—an analysis cautioning against a hasty or broad decision to dismiss. 2025 WL 1779842, at *6. Phipps had challenged his criminal history score but served his sentence during the appeal, so any ruling on the merits would have been purely advisory. Here, the district court retains jurisdiction over Mother, Father, and the children in this paternity action through the parenting plan, support orders, and other matters permitting continuing review of their circumstances. The children may not have received some vaccines because of their young ages, and other vaccinations, such as those for flu or COVID, require boosters or repetitive administrations to be effective. So this issue remains an active one in a way Phipps' claim did not.

While our ruling may become law of the case in this paternity action, that is not an inexorable bar to reconsideration upon a materially changed factual or legal landscape. *State v. Collier*, 263 Kan. 629, Syl. ¶¶ 2-3, 952 P.2d 1326 (1998); see *Hodes & Nauser v. Kobach*, 318 Kan. 940, 948-49, 551 P.3d 37 (2024) (law of the case may yield to later controlling authority calling into question result reached). Here, our conclusion rests on the scope of the protections extended individuals under the Free Exercise Clause. The United States Supreme Court stands as the final arbiter of those constitutional rights. In recent years, the Court has markedly expanded free exercise jurisprudence to reign in government actions and practices. See *Mahmoud v. Taylor*, ___ U.S.___, 2025 WL

6

1773627, at *5, 14-15 (2025) (recognizing right of parents to receive notice of and to have children sit out public school lessons dealing with sexual identity or familial relationships conflicting with their religious beliefs); 2025 WL 1773627, at *31 (Sotomayor, J., dissenting) ("Today's ruling ushers in [a] new reality [and] invents a constitutional right."); see also Mann and Yona, *Defending Jews from the Definition of Antisemitism*, 71 UCLA L. Rev. 1150, 1196, (2024) (In "recent years," the United States Supreme Court "has drastically expanded the doctrine of religious exemptions and mandatory accommodation for religious objectors" through the Free Exercise Clause.). Given that dynamic and ongoing legal expansion coupled with the district court's continuing review of the parties' relationships here, we may proceed.

*Mother's Free Exercise Clause Claim*

On appeal, Mother contends her religious beliefs against vaccinations override all other considerations, so the district court erred in ruling as it did. But Mother's legal premise is mistaken. Although Mother's religious views must be considered, they are not automatically determinative of the issue here and yield to the children's best interest, especially with respect to matters of health and medical care.

The First Amendment's Free Exercise Clause interposes a shield against undue governmental intrusion on an individual's religious beliefs or their religious practices. *Church of Lukumi Babalu Aye, Inc. v. Hialeah*, 508 U.S. 520, 532, 113 S. Ct. 2217, 124 L. Ed. 2d 472 (1993) (The Free Exercise Clause substantially limits government action that discriminates based on religious tenets or "regulates or prohibits conduct because it is undertaken for religious reasons."); see *Fulton v. Philadelphia*, 593 U.S. 522, 532, 141 S. Ct. 1868, 210 L. Ed. 2d 137 (2021) (Free Exercise Clause incorporated through Fourteenth Amendment and applicable to state entities and actors). As with other First Amendment rights, the protections of the Free Exercise Clause are not absolute. *Cantwell v. Connecticut*, 310 U.S. 296, 303-04, 60 S. Ct. 900, 84 L. Ed. 1213 (1940); *We The*

7

*Patriots USA v. Connecticut Office of ECD*, 76 F.4th 130, 144 (2d Cir. 2023); see *Harrison*, 292 Kan. at 679 ("Custody cases implicating questions of religious belief and practice require a delicate balancing of the rights of each parent and the welfare of the child whose custody is in question.").

To the extent Mother's free-exercise claim bears on the proper legal framework for resolving her dispute with Father over vaccinations, we review the district court's ruling without any particular deference. *Harrison*, 292 Kan. at 677. And *Harrison* offers some guidance in balancing a parent's free-exercise rights against a child's best interest, although the custody dispute there presented a different and distinguishable set of circumstances from the much narrower vaccination dispute here.

In that paternity action, Tauheed asked the district court to switch primary residential custody of his five-year-old son from Harrison, the child's mother, to him. Tauheed principally argued that Harrison's religious beliefs and practices as a Jehovah's Witness adversely affected the child's interactions with his social peers and his paternal relatives and would impair his emotional growth. Harrison had been the boy's primary caregiver throughout his life, and the change in primary custody would have uprooted him from his immediate community, including his school, where, by all accounts, he was doing well. The district court denied Tauheed's motion.

On a petition for review, the Kansas Supreme Court affirmed that ruling and explored how a parent's religious practices should be treated in making custody determinations. In doing so, the court surveyed earlier Kansas appellate cases and the law from other jurisdictions. The court recognized that custody determinations entail statutorily directed judicial decision-making requiring the weighing of nonexclusive statutory factors and case-specific circumstances. *Harrison*, 292 Kan. at 674-75; see K.S.A. 23-3203(a) (successor to K.S.A. 60-1610, identifying nonexclusive factors district court is to consider in custody determinations).

8

In undertaking that task, a district court's view of a parent's "*belief or nonbelief* cannot be a consideration in a custody determination." *Harrison*, 292 Kan. at 683. And, as a corollary, the district court "may not weigh the merit of one parent's religious belief or lack of belief against the other's." 292 Kan. at 683. Conversely, the effect of a parent's "religiously motivated actions" properly may be considered—among other factors—in making a judicial determination of appropriate legal or residential custody for a child. 292 Kan. at 683-84. The overarching consideration always remains the best interest of the child under the circumstances. See 292 Kan. at 683-84. Obviously, a district court's order establishing or modifying legal or residential custody of a minor child amounts to state action implicating a parent's constitutional rights including the protection of the Free Exercise Clause.

But the order here—correctly characterized—is demonstrably different and does no more than resolve a personal disagreement between Mother and Father consistent with the recommendation of an appropriate medical professional Father selects. Mother and Father had joint legal custody of the boys and were expected to confer and agree on major decisions, including medical care for them. The parenting plan presumes cooperative decision-making without carving out some special consideration for vaccinations. Accordingly, had Mother and Father agreed the children should not be vaccinated—whatever the basis each had for their respective view—the children would not have been vaccinated. (And had they agreed to vaccinate the children, that's what would have happened.) The district court got involved only because Mother and Father had an intractable personal disagreement over vaccinations and the existing orders and parenting plan provided no mechanism for resolving their dispute.

The core question—whether to vaccinate or not—calls for a medical answer rather than a judicial one. The district court entered an order that deferred the medical question to a licensed professional with the expertise to provide an appropriate answer tailored to promote the health of each child. And the district court did not select the pediatrician,

9

deferring the choice to Father. As we have said, Mother has not objected to that ruling on appeal. The chosen pediatrician would not act as a government agent but simply as a private medical practitioner advising the parents on the limited matter of vaccinating their children.

In those respects, this case is quite different from the dispute in *Harrison* where the controlling question necessarily required a judicial answer dependent upon the review and balancing of legislative and common-law factors to arrive at an ultimate determination implicating the overall parenting of a young child. Custody orders reflect the direct product of judicial decision-making and, thus, state action for constitutional purposes.

But here, Mother has not challenged a comparable determination in that the district court did no more than direct Father to select a pediatrician and both parents to follow the physician's professional recommendation. Nonetheless, *Harrison* undermines Mother's argument that her position against vaccinating the children grounded in her religious beliefs should take precedence over Father's contrary position that rested on secular considerations. The court underscored that such a weighing of competing religious and secular beliefs exceeds the ken of judicial officers and cannot be built into legal decision-making. 292 Kan. at 683. Mother, however, asks us to do just that.

In pressing her Free Exercise Clause claim, Mother argues the courts cannot question the sincerity of her religious beliefs about vaccines. We need not fully engage this argument. Our decision presupposes Mother sincerely holds the views she testified to in the district court. We see nothing in the record to suggest the district court dismissed those views as insincere.

Courts recognize that a "sincerely held" religious belief is sufficient to assert a free-exercise claim. See *Kennedy v. Bremerton School Dist.*, 597 U.S. 507, 525, 142 S.

Ct. 2407, 213 L. Ed. 2d 755 (2022); *Frazee v. Illinois Employment Security Dept.*, 489 U.S. 829, 834, 109 S. Ct. 1514, 103 L. Ed. 2d 914 (1989). And they typically will not look behind such an assertion. But the rule may not be as categorical as Mother suggests. In *Frazee*, the Court indicates that a "bizarre" belief or one "clearly nonreligious in motivation" will not suffice. 489 U.S. at 834 n.2.

*Mother's Substantive Due Process Claim*

Mother makes a second constitutional argument rooted in a substantive due process right parents have under the Fourteenth Amendment to raise and educate their children free from overly intrusive government interference. The right rests on a century of settled Supreme Court authority. *Washington v. Glucksberg*, 521 U.S. 702, 720, 117 S. Ct. 2258, 138 L. Ed. 2d 772 (1997); *Santosky v. Kramer*, 455 U.S. 745, 753, 758-59, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982); *Meyer v. Nebraska*, 262 U.S. 390, 399-400, 43 S. Ct. 625, 67 L. Ed. 1042 (1923). As with other fundamental rights, this due process protection comes with limitations. *Santosky*, 455 U.S. at 766; *Prince v. Massachusetts*, 321 U.S. 158, 166-67, 64 S. Ct. 438, 88 L. Ed. 645 (1944). Because Mother's due process argument misses the legal mark in the same way her Free Exercise Clause claim does, we need not plumb those limits.

No governmental edict, including the district court order, directed the children be vaccinated over Mother's objection. Rather, as we have said, the dispute here was a private one between Mother and Father over vaccinating their children. The district court resolved the conflict by deferring to the professional expertise of a private physician chosen by Father. As such, the district court's order does not contravene Mother's substantive due process rights.

11

*Mother's Judicial Notice Claim*

For her final point on appeal, Mother contends the district court impermissibly took judicial notice of information on the Center for Disease Control and Prevention's website. See K.S.A. 60-409 (matters subject to judicial notice). In its journal entry, the district court specifically relies on judicial notice in quoting the CDC website on the benefits of immunization: "'[v]accines can prevent common diseases that used to seriously harm or even kill infants, children, and adults. Without vaccines, your child is at risk of becoming seriously ill or even dying from childhood diseases such as measles and whooping cough.'" We need not and do not decide as an abstract matter whether the statement attributed to the CDC website is of the sort that properly could be judicially noticed under K.S.A. 60-409. See *Seymour v. Seymour*, 263 A.3d 1079, 1083-86, 1088-89 (Me. 2021) (extensive discussion under Maine statute similar to K.S.A. 60-409 regarding judicial notice of CDC information on childhood vaccinations). As we explain, Mother has failed to establish any reversible error.

Mother says the district court erred in invoking judicial notice in the journal entry without giving the parties an opportunity to question the propriety of doing so and cites K.S.A. 60-412(d) in support of her position. Moreover, K.S.A. 60-410(a) directs a district court to "afford each party reasonable opportunity to present . . . information relevant to the propriety of taking judicial notice of a matter." Consistent with the statutory scheme, both *State v. Smith*, 308 Kan. 778, 785-86, 423 P.3d 530 (2018), and *State v. Rankin*, 60 Kan. App. 2d 60, 64, 489 P.3d 471 (2021), suggest a problem when a district court purports to take judicial notice of materials for the first time in a written ruling without previously having indicated an intention to do so and inviting the parties' positions. The record supports Mother's contention.

But in her prehearing brief to the district court, Mother cited to information published on the CDC website and specifically stated: "Again, this court can take judicial

12

notice of published CDC information." To the extent the district court may have erred, Mother functionally invited the error and may not successfully complain about it on appeal. *State v. Fleming*, 308 Kan. 689, 696, 423 P.3d 506 (2018).

Moreover, the quote the district court attributed to the CDC is no more than a statement that vaccines, consistent with their basic purpose, avert serious illnesses in people of all ages and gives as examples vaccines for measles and whooping cough typically given to children. This amounts to a water-is-wet description of vaccines. See Webster's New World College Dictionary 1595 (5th ed. 2018) (defining "vaccine" as "any preparation . . . that is introduced into the body to produce immunity to a specific disease by causing the formation of antibodies"). Given the anodyne character of the quote, we fail to see an error prejudicial to Mother's position—especially since her objection to childhood vaccines has nothing to do with their effectiveness.

Affirmed.