**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**August 20, 2024**

**Christopher M. Wolpert**
**Clerk of Court**

JEREMY LEON HARRIS,

    Plaintiff - Appellee,

v.

CITY CYCLE SALES, INC.,

    Defendant - Appellant.

No. 23-3116

_____

**Appeal from the United States District Court**
**for the District of Kansas**
**(D.C. No. 2:21-CV-02264-EFM)**
_____

Sarah Lynn Baltzell, Zach Chaffee-McClure, and Taylor B. Markway, Shook, Hardy & Bacon LLP, Kansas City, Missouri, and Cynthia J. Sheppeard, Goodell, Stratton, Edmonds & Palmer, LLP, Topeka, Kansas, for Defendant-Appellant.

Jeffrey D. Rowe of Dickerson Oxton, LLC, Kansas City, Missouri, and Daniel A. Kopp, Rouse Frets White Goss Gentile Rhodes, P.C., for Plaintiff-Appellee.
_____

Before **HARTZ**, **PHILLIPS**, and **CARSON**, Circuit Judges.
_____

**HARTZ**, Circuit Judge.
_____

This appeal raises interesting questions regarding the law-of-the-case doctrine.

Jeremy Harris originally filed suit against City Cycle Sales, Inc. (CCS) in Kansas

state court on claims related to its failure to repair the Anti-Lock Brake System (ABS)

on his motorcycle, which he was riding when he was seriously injured after the ABS malfunctioned. The complaint alleged negligence and a violation of the Kansas Consumer Protection Act (KCPA), K.S.A. §§ 50-623 et. seq. But Harris abandoned the KCPA claim before the case was submitted to the jury, and the trial court's judgment, which adjudicated all his claims in a final decision, disposed of the KCPA claim with prejudice. Harris never invoked that statute on his successful appeal of an adverse judgment on the negligence claim, so the KCPA portion of the trial-court judgment was preserved. On remand to the state trial court after appeal, Harris and CCS stipulated to dismissal of the case without prejudice. Harris then sued CCS in federal district court, presenting claims of negligence and violation of the KCPA. He was awarded judgment on both causes of action.

We reverse the judgment on the KCPA claim. Harris was barred from raising the statutory claim in federal court after his abandonment of the claim in the state trial and appellate courts. Abandonment in the trial court resulted in that court's final decision against him on the claim; and his failure to challenge that decision on appeal barred him, under Kansas law-of-the-case doctrine, from trying to renew the claim after remand by the state appellate court. The without-prejudice dismissal of his state-law claims in state court could not resurrect the KCPA claim. And the federal district court was required to give full faith and credit to the Kansas proceedings, including the effect of those proceedings on his KCPA claim under Kansas law-of-the-case doctrine, when Harris refiled his claims in federal court.

We also consider CCS's challenge to the federal-court judgment against it on the negligence claim. It contends that Harris failed to present sufficient evidence that his injuries were caused by the negligence of CCS. We reject the contention and affirm the negligence judgment.

## I.    BACKGROUND

### A.    Factual Background

We summarize the evidence in the light most favorable to the verdict. *See Rock v. McCoy*, 763 F.2d 394, 396 (10th Cir. 1985). On February 17, 2014, Harris purchased a new 2014 Harley-Davidson VRSCDX "V-Rod" motorcycle. The motorcycle was equipped with an ABS, included as standard equipment on 2014 Harley-Davidson V-Rod motorcycles. An inexperienced motorcyclist, Harris practiced driving the vehicle in a parking lot near his home, as he did not yet feel comfortable driving on a public road. During this first practice session Harris noticed that although the brakes worked when applied, the ABS light was constantly blinking and continued doing so for the rest of the session. Harris thought he had read in the V-Rod manual that a blinking light indicated that the ABS was not working, but after the ABS activated during the session, he assumed that he had misread the manual and he did not reread it.

Soon thereafter, Harris drove the motorcycle to Texas to register it, a 1,000-mile round trip. The ABS light blinked constantly as Harris drove to Texas and during most of the return trip. But during the last 125 miles of the return trip, the ABS light's behavior changed: "It would sometimes blink; it would sometimes come

on solid; and then sometimes it would be off. And this tempo seemed to happen based on road conditions or basically, like, if you hit a bump or something, it would change between those three modes of operation." Aplt. App., Vol. VII at 42. He concluded that the ABS was malfunctioning.

Concerned about the ABS, Harris took the motorcycle to CCS's service department on April 14 for scheduled 1,000-mile maintenance and service. He reported to Dean Mizes, a CCS service manager and technician, the strange behavior of the ABS light during his driving in the parking lot and on his round trip to Texas. He was not asked any follow-up questions.

The next day, CCS called Harris and told him, "Your bike is finished. We've done your thousand-mile service, and it's ready to be picked up." *Id*. at 45. When Harris arrived at the business, a technician explained the services rendered without commenting on the ABS issues and gave him the motorcycle's keys. Harris then inquired about the ABS issues and was told, "We checked it, we couldn't find any diagnostic trouble codes. We don't know why the light's coming on and off, but there's nothing wrong with the system. It's safe to ride." *Id.* at 47. The repair order handed Harris did say "ABS light was on," *id.* at 50, but did not indicate that CCS had performed a road test or otherwise assessed how the motorcycle actually performed.

Mizes testified at trial about how he checked out the ABS on Harris's motorcycle: First, he checked for diagnostic trouble codes and found none. Then he test rode the vehicle, but he saw no ABS light, and the ABS system worked.

Although the 2014 V-Rod Electrical Diagnostic Manual directs the technician to then check for intermittent problems by performing a "wiggle" test, Mizes testified that he did not open a manual while working on the motorcycle and did not perform that test, nor did he contact Harley-Davidson technical support for assistance. After CCS's servicing, the ABS light continued to flash sporadically.

On May 20 Harris was driving the motorcycle between 20 and 25 miles per hour on his military base (he was a sergeant first-class) while wearing protective safety gear. As he neared an intersection, the stoplight turned yellow, and he began applying the brakes. The motorcycle started slowing down, but then the ABS light turned on, this time fully solid and not flashing. When he heard a tire screech, he released the front brake and kept the back brake on, but the motorcycle came down, pinned his left leg to the ground, and skidded along the pavement. As a result of the accident, Harris suffered severe injuries to his left knee, ankle, and foot and was medically discharged from the Army.

After the accident Harris took his motorcycle to Historic Harley-Davidson for repairs. Zachary Reeves, an employee at Historic, testified about the services rendered: He assessed the damage to the motorcycle, taking note of all damaged parts. After the damages were repaired, a test rider rode the motorcycle and noted that the ABS warning light came on, as Harris had said it would. Reeves then found some diagnostic trouble codes, and, after consulting the electrical diagnostic manual for the V-Rod and conferring with Harley-Davidson technical support, determined that a new ABS module was required to solve the problem and ordered one. After

installing the new ABS module, Reeves test rode the motorcycle and checked for and found more diagnostic trouble codes. Despite replacement of the ABS module, the ABS light was still on. Technical support recommended he check for a damaged wire in the wiring harness, where Reeves found a pinched wire. After the wiring harness was replaced, no problems were detected in a later test ride or in a check for diagnostic trouble codes. Only after the pinched wire was repaired did the ABS light go off. Once Historic repaired the wire, there were no further issues with the ABS or ABS light, and the motorcycle functioned properly. Reeves testified that intermittent electrical problems are the most concerning type of safety issue that repair shops deal with.

Wayne McCracken, an accident reconstructionist testifying at trial as an expert witness for Harris, said that ABS on motorcycles is a very important safety feature intended to prevent wheel lockup, keep the motorcycle upright, and prevent crashes. After investigating the physical evidence—which included tire marks, damage to the vehicle, and skid marks and gouge marks on the roadway—he concluded that the motorcycle's rear wheel locked up, causing Harris to lose control and crash. McCracken further testified that the rear wheel locked up because a pinched wire caused the ABS to malfunction. Also, based on a review of Harris's testimony and the repair orders from CCS and Historic, McCracken concluded that the same intermittent electrical problem with the ABS existed from the time Harris purchased the motorcycle until the crash. He said that the pinched wire caused both intermittent problems with the ABS light and the crash.

B.    **Procedural History**

Harris filed suit against CCS on May 19, 2016, in Kansas state district court, bringing claims for negligence and violations of the KCPA arising from CCS's service of his motorcycle as well as representations to him regarding that service. The KCPA claims were pleaded in both Harris's initial and amended complaints, and were included in his submission to the trial court in preparation for the pretrial conference. But the KCPA claims were not mentioned in Harris's proposed jury instructions, the jury instructions given by the court, or the verdict forms. According to Harris's brief on appeal, he "ultimately made a strategic decision not to submit his KCPA claims to the state court jury following the close of all evidence." Aplee. Br. at 11–12. The jury returned a verdict for CCS. Harris did not request that the dismissal of the abandoned KCPA claims be without prejudice, and the state trial court entered judgment against him on all claims. Harris filed a motion for new trial—again not mentioning the KCPA claims—which the state trial court denied. He appealed the judgment and the rulings against him. His docketing statement did not mention the KCPA claims and stated that the judgment was a "final disposition as to all claims by all parties." Aplt. App., Vol. I at 185. Harris did not brief the KCPA claims to the appellate court. In January 2020 the Kansas Court of Appeals reversed the judgment and remanded with directions for a new trial because of an incorrect instruction on comparative fault. *See Harris v. City Cycle Sales, Inc.*, 455 P.3d 825, at *10 (Kan. Ct. App. 2020) (unpublished). The court's mandate, as would be expected, did not mention the KCPA claims. On remand from the appellate court the

parties filed a Joint Stipulation of Dismissal Without Prejudice of the district-court case, which also did not reference Harris's KCPA claims.

In June 2021, Harris again brought suit against CCS, this time invoking diversity jurisdiction and filing in the United States District Court for the District of Kansas, asserting both negligence and KCPA claims. Among the defenses raised in CCS's answer were law of the case, res judicata, collateral estoppel, and waiver. It filed a motion to dismiss Harris's KCPA claims for failure to state a claim under Fed. R. Civ. P. 12(b)(6), arguing, among other things, that Harris had abandoned and waived his KCPA claims and that they were barred by claim and issue preclusion. Harris responded by arguing that because no merits decision had been made on the KCPA claims, there was no holding with preclusive effect, that the KCPA claims were not barred by the law-of-the-case doctrine (including Kansas law regarding compliance within an appellate-court mandate), and that his "ultimate decision not to submit a KCPA liability theory to the jury in the first trial does not constitute abandonment for this action as this action stands prior to Harris's strategic decision." Aplt. App., Vol. I at 228.

The district court denied CCS's motion. It said that although Harris had abandoned the KCPA claims in the state trial court and had failed to preserve the issue in the state appellate court, this was not determinative of whether his KCPA claims must be dismissed because the law-of-the-case doctrine and the mandate rule governed. The court ruled that "Plaintiff's abandonment of his KCPA claims, which were never considered or ruled on by the district court or the jury, could not have

Page 8

become the 'law of the case' in a manner that would compel this Court to find them precluded in this action," *Harris v. City Cycle Sales, Inc.*, No. 2:21-2264-EFM, 2022 WL 1102648, at *5 (D. Kan. Apr. 13, 2022), and that even if it had become law of the case, the court was free to depart from it. Moreover, it said, because this was a successive suit in a different tribunal, and not the same case, the law-of-the-case doctrine did not apply anyway.

Turning to CCS's preclusion argument, the court reasoned that there was no final judgment on the merits of the KCPA claims, and that even if there were, it had no preclusive effect after the reversal and remand from the Kansas Court of Appeals. The court denied CCS's motion to dismiss.

At trial the jury returned a verdict in favor of Harris. The jury calculated his damages as $4,481,200. On the negligence claim it found CCS 75% at fault and Harris 25% at fault, which would ordinarily result in a judgment of $3,360,900. On the KCPA claims the jury found liability under two of Harris's four theories, resulting in a judgment of $4,481,200, the parties apparently agreeing that there is no reduction for comparative fault under the statute. After the district court entered judgment, CCS filed a motion for judgment as a matter of law or a new trial, which was denied.

## II.    DISCUSSION

### A.    KCPA Claims/Law of the Case

CCS contends that the district court erred by not dismissing Harris's KCPA claims under the law-of-the-case doctrine.[1] "We review de novo whether the law of the case doctrine applies." *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1100 (10th Cir. 2017).

The law-of-the-case doctrine is one of several doctrines (which may overlap and have somewhat different scopes in different jurisdictions) that limit a litigant to one bite at the apple. The underlying principle is that once an issue has been resolved in a judicial proceeding, it ordinarily should not be reexamined by the court. "[T]he doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Pepper v. United States*, 562 U.S. 476, 506 (2011) (internal quotation marks omitted). The resolution of the issue need not be explicit. "Th[e] principle applies to all issues previously decided, either explicitly or by necessary implication." *Rocky Mountain Wild v. Dallas*, 98 F.4th 1263, 1288 (10th Cir. 2024) (internal quotation marks omitted). The doctrine is "based on sound public policy that litigation should come to an end and is designed to bring about a quick resolution of disputes by preventing continued re-argument of issues already decided." *Gage v. Gen. Motors Corp.*,

---

[1] CCS also argues that Harris's KCPA claims are barred by claim preclusion but since we decide that they are barred by the law of the case there is no need to address this argument.

796 F.2d 345, 349 (10th Cir.1986) (citation omitted); *see Omni Outdoor Advert., Inc.*
*v. Columbia Outdoor Advert., Inc.*, 974 F.2d 502, 505 (4th Cir.1992) (The rule
"furthers the judicial system's interests in avoiding piecemeal litigation."); *Zdanok v.*
*Glidden Co., Durkee Famous Foods Div.*, 327 F.2d 944, 953 (2d Cir. 1964)
("[W]here litigants have once battled for the court's decision, they should neither be
required, nor without good reason permitted, to battle for it again."). Absent the
doctrine, "an adverse [resolution of an issue] would become little more than an
invitation to take a mulligan, encouraging lawyers and litigants alike to believe that if
at first you don't succeed, just try again." *Entek GRB, LLC v. Stull Ranches, LLC*,
840 F.3d 1239, 1240 (10th Cir. 2016) (Gorsuch, J.).

The law-of-the-case doctrine "operates on a horizon[t]al plane—constricting a
later panel vis-à-vis an earlier panel of the same court," as well as "on a vertical
plane—constricting a lower court vis-à-vis a higher court." *In re Deepwater Horizon*,
928 F.3d 394, 398 (5th Cir. 2019). The most common application of the vertical
variant is the mandate rule, which "provides that a district court must comply strictly
with the mandate rendered by the reviewing court." *Ute Indian Tribe v. Utah*,
114 F.3d 1513, 1520–21 (10th Cir. 1997) (internal quotation marks omitted). It can
also apply, however, when the reviewing court does not even consider an issue
because it has been waived, either on appeal or in the lower court. As stated in *The*
*Law of Judicial Precedent*, although ordinarily the law of the case applies only when
"the court issue[s] a dispositive ruling on the point at hand," an exception to that
requirement is that "a waived or forfeited issue—a decision by inaction—may

become the law of the case." Bryan A. Garner et al., *The Law of Judicial Precedent* 452 (2016) (*The Law of Judicial Precedent*); *see Med. Ctr. Pharmacy v. Holder*, 634 F.3d 830, 834 (5th Cir. 2011) (stating that the law-of-the-case requirement that an issue be expressly or implicitly decided on appeal "is qualified by the waiver doctrine, which holds that an issue that could have been but was *not* raised on appeal is forfeited and may not be revisited by the district court on remand"); *United States v. Bell*, 5 F.3d 64, 66 (4th Cir. 1993) ("[T]he rule forecloses litigation of issues decided by the district court but forgone on appeal or otherwise waived, for example because they were not raised in the district court."); *Omni*, 974 F.2d at 505 ("It is elementary that where an argument could have been raised on an initial appeal, it is inappropriate to consider that argument on a second appeal following remand." (internal quotation marks omitted)). "The doctrine underscores the fundamental principle that litigants who choose their trial strategy, litigate accordingly, and lose, are not entitled to resurrect a previously abandoned issue." *Sales v. State Farm Fire and Cas. Co.*, 902 F.2d 933, 936 (11th Cir. 1990); *see Sullivan v. Flora, Inc.*, 63 F.4th 1130, 1138 (7th Cir. 2023) (A party "cannot use the accident of remand as an opportunity to reopen waived issues." (internal quotation marks omitted)); *Macheca Transp. Co. v. Phila. Indem. Ins. Co.*, 737 F.3d 1188, 1195–96 (8th Cir. 2013) ("A party who successfully obtains a remand following an initial appeal has already gotten a second bite at the apple. We should not permit such parties to hold in reserve an argument regarding a particular issue . . . ."); *United States v. Eisom*, 585 F.3d 552, 556 (1st Cir. 2009) ("Typically, a waived claim is dead and buried; it

cannot thereafter be resurrected on appeal."); *Fogel v. Chestnutt*, 668 F.2d 100, 109 (2d Cir. 1981) ("It would be absurd that a party who has chosen not to argue a point on a first appeal should stand better as regards the law of the case than one who had argued and lost."); *see also McIlravy v. Kerr-McGee Coal Corp.*, 204 F.3d 1031, 1035 (10th Cir. 2000) ("The promotion of judicial economy—a primary concern underlying the law of the case doctrine—requires that litigants be encouraged to present all available claims and defenses at the earliest opportunity.").

To be sure, the law-of-the-case doctrine recognizes exceptions to preclusion. In the context of horizontal law of the case, a court has inherent authority to reconsider its rulings until judgment has been entered. Fed. R. Civ. P. 54(b) states that in general "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." *See Kennedy v. Lubar*, 273 F.3d 1293, 1299 (10th Cir. 2001) ("Although courts are often eager to avoid reconsideration of questions once decided in the same proceeding, it is clear that all federal courts retain power to reconsider if they wish." (internal quotation marks omitted)). In contrast, vertical law of the case is quite restrictive because, among other things, lower courts have a duty to obey the directions of higher courts. *See Mason v. Texaco, Inc.*, 948 F.2d 1546, 1553 (10th Cir. 1991) ("Among the law of the case rules is the obligation of every court to honor the rulings of a court that stands higher in the hierarchical judicial structure.").

The district court in this case overlooked this duty when it said: "[A] court may depart from the law of the case in certain circumstances, including when evidence in a subsequent trial is substantially different. This plainly means that the district court would not necessarily have been constrained on remand by any prior implicit holding as to [Harris's] KCPA claims." *Harris*, 2022 WL 1102648, at *5. The predicate of this mandatory rule is that the higher court must authorize (explicitly or implicitly) the trial court to reopen the issue on which additional evidence is presented. For example, in *Mason*, 948 F.2d at 1552, we had held in a previous appeal that the district court had given improper instructions on the duties imposed on Texaco and "remanded for a new trial on all 'fact bound' issues without limitation," which included liability and damages. In the appeal following remand, we therefore held that the law-of-the-case doctrine was not violated by the imposition of punitive damages against Texaco at the retrial, even though the first jury awarded no punitive damages. *See id.* at 1553. The appellate court had clearly instructed that issues such as punitive damages could be reconsidered on retrial.

But the reasoning in *Mason* does not give the district court free rein to reopen issues resolved on the first appeal. In its discussion of law of the case, *The Law of Judicial Precedent* discusses with approval the decision in *United States v. Rivera-Martinez*, 931 F.2d 148 (1st Cir. 1991). The treatise states:

> The appellate court held that the new-evidence exception to the law-of-the-case doctrine "does not apply when a trial court gratuitously jettisons the rule in order to address an issue explicitly decided, and foreclosed, in an earlier appeal in the same case." The efficacy of the law-of-the-case doctrine would be undermined if the outcome were otherwise, the court

Page 14

reasoned. If a trial court could flout the law of the case instead of deferring to the appellate court's resolution, the court said, "the doctrine would disappear into thin air. Federal jurisprudence wisely prohibits trial judges from orchestrating self-fulfilling prophecies of that sort."

*The Law of Judicial Precedent*, at 482–83.

With this general background in law-of-the-case doctrine, we now turn to the specifics of this case. We doubt that Kansas law is significantly different from federal law in this regard; but it appears that Kansas law governs. The question before us, after all, is the effect of the Kansas state-court proceedings (which ended in a stipulated dismissal without prejudice) on this federal lawsuit. And generally a federal court should give the state-court proceedings the same effect they would have had in a subsequent proceeding in the state court. Under 28 U.S.C. § 1738, "The records and judicial proceedings of any court of any . . . State . . . shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State." As the statute clearly provides, the claim- and issue-preclusive effect of a state-court judgment is the same in federal court as in the state court. *See Allen v. McCurry*, 449 U.S. 90, 96 (1980) ("Congress has specifically required all federal courts to give preclusive effect to state–court judgments whenever the courts of the State from which the judgments emerged would do so."). We see no reason to refuse to apply that language to the situation before us. That the state-court judgment was a dismissal without prejudice should not be dispositive. Such a judgment can have issue-preclusive effects. *See, e.g., Park Lake Res. LLC v. USDA*, 378 F.3d 1132, 1136–37 (10th Cir. 2004) (prior dismissal without prejudice

Page 15

because case was not ripe required dismissal of new suit over essentially same issue when plaintiff failed to show that issue had ripened since prior judgment). And applying the state-law bar furthers, and may even be required by, the *Erie* doctrine, since otherwise a litigant would have an incentive to refile in federal, rather than state, court after dismissal without prejudice. *See Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 508–09 (2001).[2]

Although not referencing § 1738, this court took that approach in *Gage*, 796 F.2d 345. The dispute between the parties had initially proceeded in state court. *See id.* at 347. After the state court dismissed Gage's first amended complaint for failure to state a claim, he filed a second amended complaint adding an additional state-law claim. *See id.* at 348. He then moved to have the second amended complaint dismissed without prejudice so he could file a claim under the Federal Automobile Dealer's Day in Court Act. *See id.* The motion was granted, and Gage filed a complaint in federal court that realleged his state-law claims and the "Day in Court" claim. *See id.* The federal district court dismissed the state-law claims, stating that "the decision of [the state judge] dismissing Plaintiff's amended complaint in the State litigation is the law of the case and must be followed in resolving the issues presented by Defendants' motion." *Id.* at 349 (cleaned up). We affirmed on that ground, saying, "The law of case rule applies, as here, when a federal district court

---

[2] We would not go so far as to say that any ruling by the state court (say, a decision to admit evidence) is binding. Here we have the disposition of a cause of action.

reviews matters previously considered in state court involving the same parties." *Id*.; *accord Eichman v. Fotomat Corp.*, 880 F.2d 149, 157 (9th Cir. 1989); *see also Barrett v. Baylor*, 457 F.2d 119, 124 (7th Cir. 1972) ("Although rulings of state *nisi prius* courts are not binding upon federal courts in diversity cases as a matter of *stare decisis*, they are binding in instances of *res judicata* or law of the case."). We therefore take a look at Kansas law.[3]

The situation presented here is a rare (perhaps even unique) one, and there is no Kansas case on all fours with this case. It is therefore possible to distinguish this case from each Kansas case on which we rely, and the dissent tries to do so. But each step in our reasoning finds support in Kansas law and the principles underlying law of the case. Our reasoning is as follows: (1) Harris's KCPA claim was decided by the

---

[3] The dissent quotes, *see* Dissent at 13, the following sentence from a respected treatise: "When a state action is dismissed without prejudice after a ruling on a substantive issue, a federal court hearing a new action arising from the same dispute may defer to the state ruling as the law of the case,[31] but the very separateness of the actions—and the cleansing purpose of a dismissal without prejudice—has discouraged some courts from relying on law-of-the-case theory." 18B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Fed. Prac. & Proc. (Wright & Miller) § 4478.4 at 753–54 (3d ed. 2019) ("Law of the Case—Coordinate Courts"). Perhaps there is a split of authority in the federal courts on the matter. But the authority for the first clause (the case cited in footnote 31) is this court's decision in *Gage*, which is quoted for the proposition that "[t]he law of case rule applies, as here, when a federal district court reviews matters previously considered in state court involving the same parties." 796 F.2d at 349. It is therefore clear which side of the dispute this circuit is on. Further, to the extent that application of law of the case in this circumstance depends on the specifics, the treatise states in the introductory paragraph to § 4478.4: "In some settings, indeed, there is at least a hint of special deference that arises from [1] comity, [2] the desire to deter strategic changes of court to reargue lost positions, and [3] the need to avoid protracted jurisdictional disputes." Wright & Miller, § 4478.4 at 737. Factors 1 and 2 support application of the law of the case here.

state trial court. (2) For Harris to overcome that judgment against him on the KCPA claim, he needed to appeal the judgment on the KCPA claim, but he abandoned that claim on appeal. (3) Abandoning a claim on appeal makes rejection of the claim the law of the case upon remand to the trial court. (4) When a trial court is bound by law of the case, a plaintiff cannot escape that result by obtaining a dismissal without prejudice of the case and refiling the identical claim before a different tribunal. Dismissal without prejudice preserves only those claims that were still "alive" at the time of the dismissal. We proceed to explain.

First, the KCPA claim was decided by the Kansas trial court in the first instance. To be sure, as the dissent repeatedly emphasizes, that court did not explicitly mention the statutory claim in its judgment. But the trial court issued a final judgment. Under K.S.A. § 60-254(b) (in language identical to Fed. R. Civ. P. 54(b)) that required, absent a special order not issued in this case, "adjudicating all the claims and all the parties' rights and liabilities." An "order or other decision" that does not adjudicate every claim in the operative complaint is not a final judgment. *Id.* That is why, to establish jurisdiction in the state appellate court, Harris declared in his docketing statement in that court that the trial court's judgment was a "final disposition as to all claims by all parties." Aplt. App., Vol. I at 185. In particular, the trial court's judgment finally disposed of the KCPA claim. The judgment would not have been final (and could not have been appealed) if it had not dismissed the KCPA claim with prejudice. Because "a final judgment is always a final decision," *Walters v. Nat'l Ass'n of Radiation Survivors*, 473 U.S. 305, 346 n.17 (1985) (Brennan, J.,

dissenting), we must say that the trial court "decided" Harris's KCPA claim. If Harris were holding in reserve that claim in his complaint—say, he sought an order dismissing the claim without prejudice so he could raise it in a later proceeding— there would have been no final judgment and he could not have appealed. Because the KCPA claim was dismissed with prejudice by the final judgment, the resolution of that claim was a decision entitled to the respect given by law of the case. *Cf. Rocky Mountain Wild*, 98 F.4th at 1288 (10th Cir. 2024) (the law-of-the-case doctrine "applies to all issues previously decided, either explicitly or by necessary implication" (internal quotation marks omitted)).

Second, because the final judgment dismissed the KCPA claim with prejudice, Harris would be barred from raising the claim in the future absent a successful appeal of the dismissal (or a successful postjudgment motion). But, as previously set forth, Harris abandoned the statutory claim on appeal; it was not mentioned by any party or the court.

Third, because the KCPA claim was not revived on appeal, the dismissal of the claim was vertical law of the case on remand to the trial court. As stated succinctly in the recent decision in *State v. Smith*, 510 P.3d 696 (Kan. 2022): "The critical issue in this case is whether a criminal defendant may file a second direct appeal to assert claims that would have existed at the time the first appeal was filed, when such claims were either not raised or abandoned in his first direct appeal. We hold he cannot." *Id.* at 697. (We note that although some of the leading Kansas cases on law of the case are in the criminal context, the doctrine applies equally in civil cases. *See*

Page 19

*State v. Parry*, 390 P.3d 879, 883 (Kan. 2017) ("The doctrine has equal application in criminal cases.").) The court explained: "The law of the case doctrine not only applies to matters decided in a prior stage of proceedings in the same case, but also to matters for which the party failed to seek review in those prior stages." *Smith*, 510 P.3d at 700; *see also Edwards v. State*, 73 P.3d 772, 776 (Kan. App. 2003) ("If an issue could have been raised in a prior appeal but was not raised in that appeal, an appellate court should not consider the issue on a second appeal, even if the issue was not explicitly or implicitly decided on the first appeal.").

It is worth noting here that the bar of the KCPA claim under vertical law of the case applies even if one were to say that the implicit rejection of the claim in the trial court's original judgment should not be considered a "decision" for purposes of horizontal law of the case. The vertical bar arises simply from the failure of Harris to challenge on appeal the adverse judgment on the statutory claim. In *L. Ruth Fawcett Tr. v. Oil Producers Inc. of Kan.*, 507 P.3d 1124, 1130 (Kan. 2022), the plaintiff class claimed that the defendant owed the class members additional royalties because it had violated its duty to market the gas at its own expense. In the trial court the class claimed only that the marketable-condition rule for royalties required operators "to be solely responsible for the processing costs needed to transform the [processed] gas into interstate pipeline quality." *Id.* To narrow the issues, it stated that "it was not placing any facts in dispute, e.g., it was not challenging the terms of the third-party sales contracts, it was not challenging the overall price of the third-party contracts, it was not challenging whether the leases allowed the gas to be sold at the wellhead,

and it was not challenging that the gas actually was sold at the wellhead." *Id.* Even with these concessions, the class obtained summary judgment in the trial court and the Kansas Court of Appeals affirmed; but the Kansas Supreme Court reversed and remanded to the trial court. *See id.* at 1130–31. Back in the trial court, the class moved to amend its petition to raise issues it had not previously put in dispute. *See id.* at 1131. In particular, the class's proposed amendment would allege facts to support a claim that the defendant breached its duty of good faith and fair dealing, contrary to its prior concession that the contracts were not made in bad faith. *See id.* at 1132. The trial court denied the motion to amend and the intermediate appellate court affirmed. The state Supreme Court affirmed under the law-of-the-case doctrine. It said: "[T]he Class both in the district court and on appeal candidly acknowledged it sought to reverse course and put its previous factual concessions into dispute. But the law of the case doctrine precludes the Class from reversing course like this." *Id.* at 1140. It concluded: "To allow the Class now to put facts in dispute that it previously deemed admitted would give the Class an impermissible second bite at the apple. . . ." *Id.* Of course, neither the trial court nor either of the appellate courts had actually resolved the factual dispute; they did not "decide" any facts or even a claim based on those facts. They just acted on the basis of the concession by the plaintiff class. Yet the law of the case barred the plaintiff class from alleging contrary facts to raise a claim not presented to the Kansas Supreme Court on the first appeal. We have

little doubt that the Kansas courts would have barred Harris from raising his KCPA claim after remand to the state trial court.[4]

As for the fourth and final principle of Kansas law, the Kansas Supreme Court in *Parry* established that a party cannot escape the mandate of vertical law of the case by obtaining a dismissal without prejudice in the trial court after remand. In that case the district court had ordered suppression of evidence seized in a warrantless search. *See Parry*, 390 P.3d at 881. The State took an interlocutory appeal to the state court of appeals, which affirmed the suppression order. *See id.* at 881. The State did not pursue relief in the state supreme court but promptly dismissed the case without prejudice and charged Parry with the same offenses in a new case. *See id.* After another evidentiary hearing, the district court again suppressed the evidence and, again, the State challenged the ruling through an interlocutory appeal. *See id.* The appellate court held that the appeal was precluded by the law-of-the-case doctrine. *See id.* The Kansas Supreme Court affirmed, saying that "the doctrine applies not only to matters actually decided in the prior proceedings, but also to matters for which the party failed to seek review in a prior proceeding." *Id.* at 884. (We assume that the reference to the failure to seek review related to the failure to seek state supreme court review on the initial appeal.) The court then held that the doctrine

---

[4] The Kansas Supreme Court in *L. Ruth Fawcett Trust* did recognize an exception to the (vertical) law of the case that would not have precluded the plaintiff class from amending its petition if the original state supreme court decision had changed the relevant law, but it held that it had not changed the law. *See* 507 P.3d at 1134–37.

applied even though "technically, this case is not the same case as" the dismissed

case. *Id.* at 885 (internal quotation marks omitted). It pointed out that "the State

refiled identical criminal charges on the same facts against the same defendant after

losing the first interlocutory appeal just so it could repackage the same issue it had

already lost. It did so only as a means to revive a dead issue." *Id.* "[T]o ignore this

reality," it said, "would defeat the long standing purposes supporting the law of the

case doctrine." *Id.*; *cf. Grimmett v. S & W Auto Sales Co., Inc.*, 988 P.2d 755, 759

(Kan. App. 1999) ("We believe that preclusion doctrines should be applied when a

party voluntarily dismisses a case [without prejudice] after an adverse ruling has been

made on a summary judgment motion. Summary judgment procedure, at least from

the defendant's point of view, would become a virtual nullity if plaintiffs could

obtain 'overs' by dismissing and refiling a case rather than fully litigating an adverse

summary judgment decision through the appellate process.").

In light of this case law, we are confident that Harris would have been barred by

Kansas law-of-the-case doctrine if he had pursued his KCPA claims in Kansas state court

after the dismissal without prejudice of his original case. He unambiguously waived and

abandoned that claim at two steps in the proceedings. First, in the state trial court he

failed to request jury instructions on the claim, resulting in a final judgment disposing of

the claim with prejudice. Second, in the state appellate court he failed to request

reinstatement of the claim. (He has not suggested, much less argued, that there was any

chance that such a request would be granted.) As established by the law reviewed above,

waiver and abandonment of a claim is the law of the case despite the lack of any explicit

**Page 23**

court statement to that effect. *See, e.g.*, *Smith*, 510 P.3d at 697; *Eisom*, 585 F.3d at 556 ("Typically, a waived claim is dead and buried."). And *Parry* makes clear that this law of the case applies to a newly filed case that duplicates one that was dismissed without prejudice. Finally, comity, 28 U.S.C. § 1738, and the *Erie* doctrine together require the federal courts to respect the Kansas law barring Harris from pursuing his KCPA claims. He is not entitled to take a mulligan just because he has chosen a new club to hit the ball.

Because the KCPA claims were barred by law of the case, we reverse the judgment with respect to those claims with instructions to dismiss them with prejudice on remand.

### B.     Negligence Claim/Causation

CCS also challenges the judgment against it on Harris's negligence claim, contending that Harris failed to prove the causation element of the cause of action. We are not persuaded.

This Court reviews de novo a district court's denial of a motion for judgment as a matter of law based on insufficient evidence of an element of the cause of action. *See Burton v. R.J. Reynolds Tobacco Co.*, 397 F.3d 906, 916 (10th Cir. 2005). Such a denial should be reversed only "if there is no legally sufficient evidentiary basis for a claim under the controlling law." *Id.* "The question is not whether there is literally no evidence supporting the nonmoving party but whether there is evidence upon which a jury could properly find for that party." *Herrera v. Lufkin Indus., Inc.*, 474 F.3d 675, 685 (10th Cir. 2007) (internal quotation marks omitted). The bar is high for overturning a jury verdict based on the insufficiency of the evidence. "We do not

**Page 24**

retry issues, second guess the jury's decision-making, or assess the credibility of witnesses and determine the weight to be given their testimony, as it is the province of the jury, and not this court, to resolve conflicts in the evidence." *Stroup v. United Airlines, Inc.*, 26 F.4th 1147, 1157 (10th Cir. 2022) (brackets and internal quotation marks omitted).

Harris's negligence claim required him to prove causation—that is, that CCS's actions or omissions caused his injuries. CCS does not challenge the sufficiency of the evidence that the accident was caused by the pinched wire. But, as stated by the district court, Harris still had the burden of proving "the pinched wire was present at the time [CCS] serviced the motorcycle." Aplt. App., Vol. VIII at 212–13. CCS contends that Harris did not satisfy that burden. We disagree.

Harris brought his motorcycle to CCS specifically because the ABS on his motorcycle was not functioning properly. CCS documented this in its repair order, which said, "ABS light was on." Aplt. App., Vol. VII at 50. To be sure, CCS employee Mizes testified that the motorcycle showed no trouble codes and that the ABS performed as intended during a test ride. But the jury may have disbelieved him because there is no documentation of a test ride. And the test ride may not have been definitive because the ABS light problems were only intermittent. McCracken, an expert witness for Harris, opined that the pinched wire that caused the ABS to malfunction when Harris had his accident also caused the ABS light to intermittently and randomly come on as Harris described. And even after the ABS module was replaced by Historic, the ABS light was still on; only after the pinched wire was

repaired did the ABS light go off. Although we do not understand why the district court did not permit McCracken to testify explicitly to his opinion that the wire was pinched when Harris took his motorcycle to CCS, McCracken was permitted to testify to opinions from which that opinion naturally followed. If the pinched wire was the cause of both the intermittent ABS light and the failure of the ABS system (as McCracken testified), and the intermittent light was a problem with the motorcycle when it was taken to CCS, then the pinched wire must have been present when CCS examined the vehicle. "[C]ausation may . . . be inferred by a jury if the plaintiff has provided evidence that would make the inference reasonable." *Truck Ins. Exch. v. Magnetek, Inc.*, 360 F.3d 1206, 1214–15 (10th Cir. 2004). We think that the evidence admitted at trial was sufficient for a nonexpert to reasonably infer that Harris established causation.

## III.    CONCLUSION

We **AFFIRM** the district court's denial of judgment as a matter of law on the causation issue and **REVERSE** the district court's denial of judgment as a matter of law on the KCPA issue.

23-3116, *Harris v. City Cycle Sales, Inc.*
**PHILLIPS, J.**, concurring in part and dissenting in part.

For the reasons explained below, I do not join Parts II.A and III of the majority's opinion.[1]

The law-of-the-case doctrine directs that when a court "decides" an issue, "that *decision* should continue to govern the same issues in subsequent stages in the *same case*." *Arizona v. California*, 460 U.S. 605, 618 (1983) (emphases added). But here, no Kansas court has ever issued a "decision" on Harris's KCPA claim. *See id.* Nor is this federal case the "same case" as Harris's state case considering that the parties agreed to a voluntary dismissal of the state case without prejudice pursuant to Kan. Stat. Ann. § 60-241(a)(1)(A), and Harris then filed this new case in federal court.[2] *Arizona*, 460 U.S. at 618. Given the lack of a decision in the same case, I do not think that the federal district court erred by declining to invoke the law-of-the-case doctrine to dismiss Harris's KCPA claim. And because none of the authority that the majority cites holds that federal district courts are required to apply the law-of-the-case doctrine to issues that have been abandoned by a party (but never

---

[1] I join the majority's ruling that Harris proved the causation element of his negligence claim. *See* Maj. Op. at 24–26.

[2] Kan. Stat. Ann. § 60-241(a)(1)(A) permits plaintiffs to voluntarily dismiss an action "without a court order . . . by filing: a stipulation of dismissal signed by all parties who have appeared." "When the dismissal is by stipulation, the clerk of the court must enter an order of dismissal as a matter of course." *Id.*

decided) in a separate case before a different tribunal, especially when that case was dismissed without prejudice, I respectfully dissent from the majority's law-of-the-case ruling.

## I.    Decided in the Same Case

"As most commonly defined, the [law-of-the-case] doctrine posits that when a court *decides* upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the *same case*." *Arizona*, 460 U.S. at 618 (emphases added); *see also Entek GRB, LLC v. Stull Ranches, LLC*, 840 F.3d 1239, 1241 (10th Cir. 2016) ("The law-of-the-case doctrine . . . preclud[es] the relitigation of issues . . . *resolved* in prior proceedings *in the same court*." (emphases added)); *Kennedy v. Lubar*, 273 F.3d 1293, 1298 (10th Cir. 2001) ("The law of the case doctrine posits that when a court *decides* upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case" to "avoid reconsideration of matters once decided during the course of *a single continuing lawsuit*." (emphases added) (cleaned up)). The majority seems to agree. *See* Maj. Op. at 10 ("[T]he doctrine posits that when a court *decides* upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the *same case*." (emphases added) (quoting *Pepper v. United States*, 562 U.S. 476, 506 (2011) (internal quotation marks omitted))).

Here (1) no court has *decided* upon a rule of law concerning Harris's KCPA claim and (2) Harris's federal case is not the *same case* as Harris's state-

2

court case that the parties agreed to dismiss without prejudice. So, in my view, the law-of-the-case doctrine is inapplicable, and the federal district court did not err by rejecting City Cycle's motion to dismiss Harris's KCPA claim.

> **A. There is no state-court "decision" on Harris's KCPA claim that could become the law of the case in the district court.**

"The doctrine of law of the case comes into play only with respect to issues previously determined." *Quern v. Jordan*, 440 U.S. 332, 347 n.18 (1979); *see also Chung v. Lamb*, 73 F.4th 824, 835 (10th Cir. 2023) ("Unless and until a court addresses a point implicated by the dispute, whether raised by the parties or not, there is no law of the case to apply." (quoting Bryan A. Garner et al., *The Law of Judicial Precedent* 448 (2016)); *Kennedy*, 273 F.3d at 1299 ("[L]aw of the case principles apply only to decisions on the actual merits."); *Wilmer v. Bd. of Cnty. Comm'rs*, 69 F.3d 406, 409 (10th Cir. 1995) ("Law of the case principles do not bar a district court from acting unless an appellate decision has issued on the merits of the claim sought to be precluded." (quotation omitted)); *Fortis Corp. Ins., SA v. Viken Ship Mgmt. AS*, 597 F.3d 784, 792 (6th Cir. 2010) (O'Connor, J., sitting by designation) ("The law of the case doctrine has no application where the issue in question was not previously decided." (quotation omitted)); 18B Charles A. Wright, Arthur R. Miller, & Edward H. Cooper, Federal Practice and Procedure § 4478 (3d ed. 2024) ("[An] actual decision of an issue is required to establish the law of the case."); *The Law of Judicial Precedent* at 448 ("A ruling qualifies as the law of

3

the case only if it meets two conditions: there must be a decision on a particular legal issue, and that decision must be final."). But here, neither the Kansas trial court nor the Kansas appellate court addressed Harris's KCPA claim at all. Thus, the first component of the law-of-the-case doctrine—a decision—is missing.

The majority opinion reinforces that the law-of-the-case doctrine applies only when an issue has been decided. Indeed, every case that the majority cites concerning the law-of-the-case doctrine involved an issue that a court had previously decided. *See Zdanok v. Glidden Co., Durkee Famous Foods Div.*, 327 F.2d 944, 953 (2d Cir. 1964) (ruling that the "court's *interpretation* of the contract" in a prior appeal of a "test case" governed the party against whom the contract was invoked because that party was "given the opportunity to make its argument on the construction of the contract and took full advantage of it" (emphasis added)); *Entek GRB*, 840 F.3d at 1240–41 (declining to consider in a "second appeal" the issues that the Tenth Circuit had "*considered and resolved in the first appeal*" (emphasis added)); *Gage v. Gen. Motors Corp.*, 796 F.2d 345, 347, 350 (10th Cir. 1986) (affirming the district court's application of the law-of-the-case doctrine to adopt the state court's "final *decision . . . dismiss[ing]*" the plaintiff's claims in a prior state case based on the state court's finding that the plaintiff had "failed to state a claim for relief" (emphasis added)); *United States v. Bell*, 5 F.3d 64, 66 (4th Cir. 1993) ("[T]he [mandate] rule forecloses litigation of issues *decided* by the district court but

4

foregone on appeal or otherwise waived . . . ." (emphasis added)); *State v. Smith*, 510 P.3d 696, 697, 699–700 (Kan. 2022) (declining to consider in the defendant's fourth appeal the defendant's new arguments challenging the constitutionality of his sentence given that the district court had denied the defendant's motion for a sentence modification and the defendant didn't challenge the constitutionality of his sentence in his initial appeal of that denial-decision); *State v. Parry*, 390 P.3d 879, 883–85 (Kan. 2017) (applying the law-of-the-case doctrine to a suppression issue that had been *decided* by the trial court and affirmed on appeal).[3]

Recognizing that the "decision" component of the law-of-the-case doctrine is absent here, the majority attempts to equate an abandoned issue with a decided issue. Specifically, the majority says that the law-of-the-case doctrine "can also apply" "when the reviewing court does not even consider an issue because it has been waived." Maj. Op. at 11. No cite follows this statement, but the next sentence quotes from *The Law of Judicial Precedent*, which states that an exception to the requirement that a court has issued a "dispositive ruling on

---

[3] The majority also cites *Pepper*, 562 U.S. at 505–08, in which the Supreme Court determined that after an appellate court had set aside the defendant's entire sentence and remanded for de novo resentencing, the original sentencing court's decision was no longer the "law of the case" and so the district court on remand was "not bound by the law of the case doctrine to apply the same [sentence variance] that had been applied at [the defendant's] prior sentencing." I strain to see how *Pepper* aids us in our resolution of this case given the lack of procedural similarities, and the majority does not explain how *Pepper* supports the result that it reaches.

the point at hand" is "that a waived or forfeited issue—a *decision* by inaction—may become the law of the case." Maj. Op. at 11 (emphasis added) (quoting *The Law of Judicial Precedent* at 452). The cases that *The Law of Judicial Precedent* cites in support of this statement are *Medical Center Pharmacy v. Holder*, 634 F.3d 830, 834 (5th Cir. 2011), and *Liccardi v. Stolt Terminals, Inc.*, 687 N.E.2d 968, 972 (Ill. 1997). Examining these cases reveals that this exception does not cover cases like the one before us now—an abandoned claim brought in federal court after the state case was dismissed without prejudice; rather, it pertains to issues a court has previously decided and that were waived on either a first or second appeal in a single continuing lawsuit.

*Medical Center Pharmacy* is a classic appellate-waiver case. A group of pharmacies filed a lawsuit for injunctive and declaratory relief challenging the authority of the FDA to regulate compounded drugs under the Federal Food, Drug, and Cosmetic Act (FDCA), 21 U.S.C. §§ 301–399a. *Medical Center Pharmacy*, 634 F.3d at 832. Among other things, the pharmacy-plaintiffs sought declaratory judgments "(1) that compounded drugs are not 'new drugs' or 'new animal drugs' under the FDCA . . . , and (2) that the [pharmacy-plaintiffs] . . . [were] exempt from the heightened 'records inspection' authorized by" the FDCA. *Id.* (cleaned up). The district court granted summary judgment to the pharmacy-plaintiffs on both declarations, and the FDA appealed. *Id.* at 832–33. Before the Fifth Circuit, the FDA sought review of "only the district court's ruling on the new-drug issue," and "specifically

6

disavowed any intent to raise the inspection issue." *Id.* at 833. The appellate court reversed the district court's ruling on the new-drug issue, noting that "neither party appeals the [district court's] holding regarding 'records inspection,'" and remanded for further proceedings. *Id.* (cleaned up). On remand before the district court, the FDA asserted that the Fifth Circuit's new-drug ruling required a "reevaluation of the district court's original" records-inspection ruling. *Id.* "The district court agreed, and it entered a new judgment that declared that the FDA has the statutory authority to conduct limited inspections of the records of pharmacies . . . ." *Id.* The pharmacy-plaintiffs appealed, bringing the case before the Fifth Circuit for a second time. *Id.* at 834. In the second appeal, the Fifth Circuit ruled that the case "fit[] squarely within the waiver doctrine": not only had the FDA "failed to raise its objection to the district court's original" records-inspection ruling in the first appeal, but it had "expressly disavowed any intent to raise" the records-inspection issue. *Id.* at 835–36. Thus, the Fifth Circuit held, "[T]he FDA forfeited the inspection issue, and the district court erred by reversing its prior inspection ruling on remand." *Id.* at 836. In my view, there are vast differences between an issue that was decided and then expressly disavowed in a previous appeal before the same court (*Medical Center Pharmacy*), and an issue that was abandoned, but never decided, in a different tribunal before the case was dismissed without prejudice (this case). And so I do not think that this case belongs in the same decision-exception category as *Medical Center Pharmacy*.

7

*Liccardi* is no more analogous to the case now before us. Indeed, the parenthetical following the cite to *Liccardi* reads: "[A]s a general rule, the failure of a party to challenge a legal *decision* when it has the opportunity to do so renders that *decision* the law of the case for future stages of the *same litigation*, and [that party is] deemed to have waived the right to challenge that *decision* at a later time." *The Law of Judicial Precedent* at 452 n.24 (emphases added) (quoting *Liccardi*, 687 N.E.2d at 972). *Liccardi* is thus being used to bolster the idea that a decision on an issue, and a party's failure to challenge that decision, makes that issue waived "for future stages of the same litigation." *Id.* (quoting same). But again, a decision must be made for that decision to govern "future stages of the same litigation." *Id.* (quoting same). By contrast here, no court has ever issued a decision about Harris's KCPA claim, and Harris's federal case is not a "future stage" of the state litigation.[4] So *Liccardi* is, at best, tenuously relevant to this case, leaving us still in uncharted waters.

In my view, these cases evince that *The Law of Judicial Precedent* quote that the majority relies on does not address the situation before us at all: a plaintiff brings and then abandons a claim in state court before the court issues a decision on that claim, the parties agree to a voluntary dismissal of that state

---

[4] The majority also cites *Omni Outdoor Advertising, Inc. v. Columbia Outdoor Advertising Inc.*, 974 F.2d 502, 505 (4th Cir. 1992), which, like *Medical Center Pharmacy* and *Liccardi*, is an inapposite appellate-waiver case. *See Omni Outdoor Advert.*, 974 F.2d at 505 (ruling that the plaintiff could not argue in its second appeal that it was entitled to a new trial based on a theory of liability that it could have, but did not, assert in its first appeal).

8

case without prejudice, and that same plaintiff then files a new case, including his abandoned claim, in federal court; rather, this quote, and the cases supporting it, all involve a situation where a district court has decided an issue and the party fails to challenge that decision (either in the district court or on appeal) before the same tribunal in a single continuous lawsuit.[5] That is not this case.

To be sure, I agree with the majority that if this case had proceeded on remand in state court and the Kansas trial court had determined that Harris's failure to submit his KCPA claim to the jury during the first trial waived that claim (thus barring him from asserting his KCPA claim in the second remand-trial), then the Kansas Court of Appeals would have affirmed that decision under the law-of-the case doctrine. *See, e.g.*, *Smith*, 510 P.3d at 700 ("The law of the case doctrine not only applies to matters decided in a prior stage of

---

[5] The same is true for the cases cited by the majority in support of its view that "litigants who choose their trial strategy, litigate accordingly, and lose, are not entitled to resurrect a previously abandoned issue." Maj. Op. at 12 (quoting *Sales v. State Farm Fire & Cas. Co.*, 902 F.2d 933, 936 (11th Cir. 1990)). I agree with this statement for cases operating on either a "vertical plane—constricting a lower court vis-à-vis a higher court," or on a "horizontal plane—constricting a later panel vis-à-vis an earlier panel of the same court." *Id.* at 11 (cleaned up). But the federal district court is not a lower court to either Kansas's trial or appellate courts. Nor is it the "same court" as either of the state courts involved in Harris's first case. *Id.* (citation omitted). So the majority's discussion about how the law-of-the-case doctrine operates on horizontal and vertical planes, *id.*, and the cases cited in support thereof, *id.* at 11–13 (collecting cases discussing how the law-of-the-case doctrine works within a single continuous lawsuit in a single judicial system), are irrelevant to the more specific and unique question presented here.

9

proceedings in the same case, but also to matters for which the party failed to seek review in those prior stages."); *L. Ruth Fawcett Tr. v. Oil Producers Inc. of Kan.*, 507 P.3d 1124, 1131, 1140 (Kan. 2022) (affirming the Kansas trial court's denial of a party's motion to amend its petition to raise an issue not previously in dispute after the Kansas Supreme Court reversed and remanded the case back to the Kansas trial court for further proceedings); *see also* Maj. Op. at 23. But that is not what happened here. Indeed, neither the Kansas trial court nor the Kansas Court of Appeals ruled that Harris had waived or abandoned his KCPA claim. Had either court done so, we would have a decision. What's more, City Cycle could have easily procured this kind of decision in either of two ways: (1) by asking the Kansas trial court to dismiss the KCPA claim before submitting the case to the jury; or (2) by not agreeing to a dismissal without prejudice after the Kansas appellate court reversed and remanded the case for a new trial. Either option would have procured a decision on the KCPA claim. But without such a decision, the law-of-the-case doctrine does not apply.

### B. Harris's case in federal court is distinct from his state-court case.

The law-of-the-case doctrine also requires that an issue have been decided or "resolved in prior proceedings *in the same court*." *Entek GRB*, 840 F.3d at 1241 (emphasis added); *Thoroughbred Assocs. L.L.C. v. Kansas City Royalty Co.*, 308 P.3d 1238, 1251 (Kan. 2013) ("The law of the case

10

prevents relitigation of the same issues within *successive stages of the same suit*." (emphasis added) (citation omitted)). After the parties agreed to dismiss the state case without prejudice, Harris filed a new case in federal court. So we have two distinct lawsuits here—the suit in the Kansas state-court system and the suit in the federal-court system. The majority wants to use Harris's abandonment of his KCPA claim in the first suit to preclude Harris from filing his KCPA claim in the second. But "[t]he doctrine that limits the relitigation of an issue in a subsequent suit, as opposed to a subsequent stage of the same suit, is collateral estoppel, not law of the case."[6] *Rekhi v. Wildwood Indus., Inc.*, 61 F.3d 1313, 1317 (7th Cir. 1995); *accord State v. West*, 281 P.3d 529, 532 (Kan. Ct. App. 2011) ("[L]aw-of-the-case promotes the same goals as res judicata except that it operates within the life of a single case rather than across successive cases."). "It would be a different matter if [Harris's] state court suit

---

[6] City Cycle also argues on appeal that Harris's KCPA claim is barred by res judicata (or claim preclusion). The majority does not reach this issue based on its ruling that Harris's claim is barred by the law-of-the-case doctrine. *See* Maj. Op. at 10 n.1. But had the majority reached the res judicata issue, it would have easily concluded that Harris's KCPA claim is not precluded because a case that is dismissed without prejudice does not have a preclusive effect. *See Santa v. City of Tulsa*, 359 F.3d 1241, 1246 n.3 (10th Cir. 2004) ("Generally, a dismissal without prejudice 'is a dismissal that does not operat[e] as an adjudication upon the merits, . . . and thus does not have a res judicata effect.'" (quoting *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 396 (1990)); *cf. Herington v. City of Wichita*, 500 P.3d 1168, 1181 (Kan. 2021) ("hold[ing]" that when a federal court dismisses a party's claims without prejudice that "there has been no final judgment on those . . . claims, and the Kansas common law doctrine of res judicata does not preclude a litigant from bringing those claims in state court").

11

had been removed or otherwise transferred to federal court." *Rekhi*, 61 F.3d at 1317. Certainly then, assuming there was a "decision" on the KCPA claim, the "doctrine of law of the case would apply, for it would be the same suit, albeit in different courts." *Id.* (citing *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816 (1988)). But that is not what occurred. Instead, on remand from the Kansas appellate court, the parties stipulated to a voluntary dismissal of the state case without prejudice, "leav[ing] the parties as though the action had never been brought." *Pinson v. Equifax Credit Info. Servs., Inc.*, 316 F. App'x 744, 751–52 (10th Cir. 2009) (unpublished) (quoting *Brown v. Hartshorne Pub. Sch. Dist.*, 926 F.2d 959, 961 (10th Cir. 1991)). Harris then started over in federal court with a new case.[7] Because the state case is not the "same case" as the federal case, the law-of-the-case doctrine does not apply.

---

[7] The procedural history in this case is dissimilar to that in *State v. Parry*, 390 P.3d 879 (Kan. 2017). In the majority's view, *Parry* stands for the proposition that the "law of the case applies to a newly filed case that duplicates one that was dismissed without prejudice." Maj. Op. at 23. While in certain circumstances this may be true, *Parry* is unlike the situation here where there was no district-court (or appellate-court) decision on the pertinent issue.

The question in *Parry* was whether the law-of-the-case doctrine "prevents the State from relitigating an evidence suppression question in a second criminal prosecution after it lost on that question in an earlier appeal, then dismissed the first case, and refiled a new one against the same defendant on the same charges." 390 P.3d at 881. Reviewing the second case, the Kansas Supreme Court ruled that the law-of-the-case doctrine applied because, "though[] technically . . . not the same case," the "issue *decided* against the State [in the first case] is the same issue the State seeks to pursue in this second prosecution, *i.e.*, whether the evidence . . . should be suppressed." *Id.* at 884 (emphasis added) (citation omitted).

(*footnote continued*)

12

* * *

Like the majority, I cannot find another case with the same unusual procedural posture as this case. *See* Maj. Op. at 17.[8] But Wright and Miller's *Federal Practice and Procedure* addresses this uncommon situation. That treatise explains that "[w]hen a state action is dismissed without prejudice after a ruling on a substantive issue, a federal court hearing a new action arising from the same dispute *may* defer to the state ruling as the law of the case, but *the very separateness of the actions*—and the *cleansing purpose of a dismissal without prejudice*—has discouraged some courts from relying on law-of-the-case theory." Wright & Miller, *supra*, § 4478.4 (emphases added).

---

For two reasons, *Parry* is distinguishable from this case. First, the suppression issue had been *decided* by the trial court (and affirmed by the appellate court) in the first case. Second, both lawsuits were filed in the same tribunal: both cases proceeded in the Kansas state-court system. *See id.* at 885 (noting that "Parry's second prosecution amounted to a successive stage in the same criminal prosecution, in which the State had already litigated—and lost— the suppression issue"). So, while I do not challenge the reasoning or outcome in *Parry*, I do not see how that decision applies to this case where (1) the KCPA issue was never decided and (2) the second case was filed in a different court system than the first case.

[8] Given that the procedural posture of this case is an outlier (neither the panel nor the parties have found one like it), I do not think that we risk promoting gamesmanship or forum-shopping by permitting Harris to pursue his KCPA claim in federal court. Indeed, Harris's risk of losing the KCPA claim completely by losing the state appeal on the jury-instruction issue is too great to worry about future litigants taking this gamble in hopes of a federal-court do-over. And the risk is even greater given that Harris had no guarantee that City Cycle would agree to the dismissal without prejudice. Thus, I have no concern that Harris being allowed to bring his KCPA claim in this federal case will open the floodgates for litigants attempting to follow the same risky and unconventional path that Harris paved in this case.

13

Assuming for the sake of argument that there was a state-court ruling on Harris's KCPA claim (which, as detailed above, there wasn't), this quote supports my view that the federal district court had discretion about whether to defer to that state-court ruling, but that "the separateness of the actions" and the "cleansing purpose of dismissal without prejudice" meant that the district court was free to disregard the law-of-the-case doctrine and allow Harris to litigate his KCPA claim in federal court.[9] *Id.*; *see also Rocky Mountain Wild v. Dallas*, 98 F.4th 1263, 1288 (10th Cir. 2024) ("[T]he decision whether to apply the law of the case doctrine remains a matter of judicial discretion." (quoting *Entek GRB*, 840 F.3d at 1242)). There is no authority in the majority's opinion indicating that the district court erred by allowing Harris's KCPA claim to proceed to trial.

Given the absence of authority indicating that the district court erred by declining to apply the law-of-the-case doctrine to a claim that was never decided, in a different case, before a different tribunal, that ended in a dismissal without prejudice, I would affirm. Because, in my view, the majority attempts to fit a square peg into a round law-of-the-case-doctrine hole, I respectfully dissent.

---

[9] Under 28 U.S.C. § 1738, the majority says, "the claim- and issue-preclusive effect of a state-court *judgment* is the same in federal court as in the state court." Maj. Op. at 15 (emphasis added). I agree with this statement of the law. But when, as here, there is no state-court *judgment* on Harris's KCPA claim to be given preclusive effect, this legal principle is inapplicable.

14